WILLIAM W. HENDERSON *et al.*, Respondents, *v.* JAMES DICKEY *et als.*, Appellants.

*Equity—Mistake—Deeds.*—A court of equity interferes to correct a mistake in a written instrument only for the furtherance of justice ; and is under no obligation to correct the mistake, unless its interference is necessary to prevent the perpetration of a fraud or some injustice ; and the party asking relief must stand upon some equity superior to that of the party against whom he seeks it. (Dryden, J., dissenting.)

*Appeal from St. Louis Land Court.*

*Glover & Shepley*, for respondents.

The plaintiffs brought their suit against the defendants, stating that they were the grantees of one Warson, and wife, for certain lots and blocks in Carondelet ; that Warson derived his title from one Taylor, the father of the defendant Jane Dickey, wife of defendant Dickey, and the only heir of said Taylor ; that Taylor, in making the conveyance to Mrs.

Warson had misdescribed the lots, making the description confused, ambiguous and erroneous; that he intended to convey block E. and the south-east quarter of H. The petition recited the conveyances from Carondelet, until they came to Bowlin, and the deed of Bowlin and wife to Mrs. Warson, as also the deed of Warson and wife to Henderson.

The answer admitted that Bowlin had title by mesne conveyances from Carondelet to block E., and also the south-east quarter of block H.; that he conveyed them to Taylor; that Taylor intended to convey to Mrs. Warson, by his deed to her, the south-east quarter of block H., but says it was a donation from Taylor to Mrs. Warson.

Upon the trial, among other testimony, the plaintiff called John W. Warson as a witness, who proved that he purchased the lots of James B. Bowlin, and took the deeds in the name of Taylor, (witness paying the purchase money,) as he was then embarrassed; that finding Taylor was getting into bad habits, he tried to induce him to convey them to him; that he would only convey them to his (Warson's) wife; that Warson did not have the deeds with him, but gave the description of the lots to the justice who wrote the deeds, as he recollected it, and that both he and Taylor supposed them to be a correct description of the lots conveyed by Bowlin to Taylor; that he afterwards conveyed said lots to Henderson, in payment of rent he owed Henderson for a farm he occupied.

The court, after hearing other evidence and documentary proofs clearly establishing that Taylor had no other lots or blocks in Carondelet, except the lot and block in controversy, and the inaccuracies and misdescriptions in the deed, and that it was intended to convey said block E., and the south-east quarter of block H., gave judgment for plaintiffs.

*Broadhead* and *Cates*, for appellants.

We suggest that there is no cause of action stated in petition to reform the deeds of 1842; because there is no averment that the mistake, &c., was mutual, or, in other words,

that Taylor intended to convey block E. and south-east quarter of block H., and that Mrs. Warson intended to receive and accept the same; for, in the absence of fraud or bad faith, the rule of law is that the mistake must be certain and mutual on the part of the parties, in order to reform a written contract or deed. (1 Story Eq. Juris. §§ 151 to 156, and cases cited.)

That a latent ambiguity in a deed may be explained by parol evidence, in order to identify an estate in land, or the person who may receive the same, where doubt in. that regard is created by parol proof; but such parol evidence, to explain the words of a deed, must be certain and manifest, and leave no doubt on the mind of the court as to the meaning of the words used in the deed and the object to which they refer. But parol proof can never be introduced to ascertain and establish the intention of the parties as an independent fact. (Hammond v. Ridgeley, 5 Har. & John. 245, 254; Jackson v. Barkhurst, 4 Wend. 369, 373; Add. on Con. 848.)

That the rule of law is fixed, that a party plaintiff who claims the right of specific performance of an executed or executory contract, must clearly manifest to a court of equity, that he, and those under whom he claims, acted in good faith; that he and they, by implication or otherwise, are free from all fraud and bad faith; that the contract which is prayed to be "reformed" or "enforced," is based on a valuable consideration, not voluntary; that it is certain and mutual in all its parts, freed from all doubt or difficulty in its execution.

With all proper respect we ask, does the proof of respondents make out that kind of case? Certainly not. Instead of Taylor being a *bona fide* purchaser for value from Bowlin and wife, he is proved to have been a volunteer to aid Warson to defraud his creditors. Instead of Mrs. Warson being a *bona fide* purchaser for value, she is proved to be a fraudulent substitute for Taylor, who had become a poor, silly drunkard, unsafe to shield Warson from his just creditors

Instead of Henderson being a *bona fide* purchaser for value he is proved to be the landlord of Warson, and, for pretended rent due, is substituted for Mrs. Warson as stakeholder for Warson. Certainly the judgment of the Land Court violates all wise and just rules of specific performance or reformation; such matters are at all times addressed to the sound discretion of the court. Hence in this case the question is presented, did the Land Court wisely, justly and properly exercise that discretion? (1 Story Eq. Juris. §§ 151 to 156, and cases cited; 2 Pow. on Con. 137, and cases cited; Mintren v. Seymour, 4 John. Ch. 500, 506; Seymour v. Delany, 221; Green v. Gordon, 1 Hill Ch. 221; Miller, &c., 1 Green Ch. 199; Westbrook, &c., 2 McCord Ch. 112, 115; Clineau, &c., 1 Sch. & Lef. 22.)

Again, lapse of time and statute of limitation was pleaded as a bar. The rule of equity is, that he or she who sleeps on his rights will be allowed to sleep on. There being no cause assigned in the petition for the delay of fifteen years, the same was bad on its face, and should have been dismissed.

*Glover & Shepley*, for respondents.

The defendants seem to rest their ground for reversal upon three propositions:

1. That, admitting every thing stated in petition to be true, the plaintiffs could not recover.

2. The facts as proved did not warrant the finding.

3. That Warson should not have been admitted to prove that Taylor paid Bowlin nothing for the land conveyed to Taylor by Bowlin, but all was paid for and purchased by Warson, and that Taylor held it for him; and, also, that he ought not to be permitted to prove that he (Warson) caused the conveyances to be made to Taylor for the purpose of hindering and delaying creditors of Warson.

To these propositions we say:

I. That a court in chancery will always interfere (when others rights have not vested) in reforming an instrument

and making it carry out the obvious intent of the grantor. (1 Story Eq. Juris. §§ 152–6.)

II. The facts as proved all tended to the one point, that it was intended to convey the block E. and the south-east quarter of block H.

III. The evidence of Warson was admissible. 1. As to the facts that Taylor paid nothing to Bowlin for the land, but he paid it. There is no conflict between the allegations of the petition, that Bowlin conveyed to Taylor for a valuable consideration paid by Taylor to him, and the statements of the witness. It was brought in to show that the lands held by Taylor, and that conveyed by Taylor to Mrs. Warson, were identical. It was altogether an immaterial issue, as the plaintiffs were grantees for value from Warson and wife, and the only issue as between plaintiffs and defendants could be, as to the identity of the lots in controversy, with those conveyed by Taylor to Mrs. Warson. 2. That the testimony of Warson as to being equitably entitled to the land in controversy, as having bargained with Bowlin for it and paid the consideration, ought to have been rejected, because he admits that he had it conveyed to Taylor, because he was then in embarrassed circumstances.

This is not a suit between parties to that transaction. There is no proof that Henderson knew anything about these transactions; he simply took a deed from Warson and wife, and paid a valuable consideration therefor, and found that the land described therein was described in such an uncertain rambling manner, that it was difficult to say exactly what it did convey. Plaintiffs were entitled, if the facts were as they alleged, to have the mistakes as to boundaries and description corrected ; and it made no difference, as far as they were concerned, what were the transactions between Taylor and Warson.

It is not a bill asking that the court would draw a title from Taylor to Warson, because Taylor had already made that conveyance ; and if a mistake has been made and can be shown, there is no reason why even as between *Taylor*

and *Warson*, a decree should be made correcting that error. But the case does not so stand under the evidence; no court would hesitate as to finding that there had been good and valuable consideration paid by Henderson to Warson, (if there was no reasonable doubts even of the state of accounts between Warson and Taylor,) so that Henderson stands here asking that the deed under which he holds, having paid value, shall be reformed.

BATES, Judge, delivered the opinion of the court.

This suit was begun July 18, 1857. The petition stated that on the 14th day of October, 1842, Joseph D. Taylor conveyed to Elizabeth Warson, a lot of ground described as block "H." in Carondelet, and that block "E." was intended to be conveyed by Taylor, and that the misdescription was the result of misapprehension, accident and mistake. That Mrs. Warson and her husband on the 30th October, 1845, conveyed said block "E." to the plaintiffs; that Taylor had died leaving only one child his heir, who was named Sarah, the wife of the defendant Dickey, and that Dickey and wife (by a tenant O'Brien) held possession of said block "E.," and prayed that the mistake in the deed from Taylor to Warson might be corrected, and Dickey and wife compelled to release to the plaintiffs all their right in said block "E.," and for compensation for the use thereof by the defendants. The defendants admitted possession of block E., and denied that by the deed from Taylor to Warson he intended to convey block E.; and also set up the lapse of time as a bar.

The petition, in a second count, stated that there was another deed made by Taylor to Mrs. Warson, in which there was also a mistake, and prayed the same sort of a judgment as to it. The defendants denied having possession of the lot mentioned in the second count, or making any claim to it. There is no allegation in the petition as to the time when the alleged mistakes were discovered, nor was any evidence given by either party at the trial, directly upon the subject of the

9—VOL. XXXV.

time of the discovery of the alleged mistakes. There was no evidence of possession by the defendants of the lot described in the second count.

The evidence as to the fact of mistake was somewhat conflicting, but preponderating in favor of the plaintiff. The petition charged that the conveyances by Taylor to Warson were made for a valuable consideration. The principal witness of the plaintiffs to show the fact of mistake, was John W. Warson, the husband of Taylor's grantee, Mrs. Warson; and he himself originally purchased from Judge Bowlin the lots in Carondelet, and had them conveyed to Taylor, to keep till he (Warson) could get out of his difficulties; that the understanding between Taylor and himself was, that when he got out of difficulties Taylor would convey the lots to him; that Taylor paid Bowlin nothing for the lots; that Taylor refused to convey the lots to him, but agreed to convey them to his wife, who was Taylor's sister, and that he (witness) procured the deeds to be written and took a justice of the peace to Taylor's, and Taylor then made the deeds, and nothing was given to Taylor for the deeds.

The justice of the peace who took Taylor's acknowledgment of the deeds, also testified that he understood from both Taylor and Warson, that Taylor held the lots for Warson; that he understood that Taylor held the lots in trust, or for security for Warson. It was also testified that Warson was in embarrassed circumstances; that he was generally pretty hard run.

The case, as made in proof, certainly does not conform to that stated in the petition. A court of equity interferes to correct a mistake in a written instrument, only for the furtherance of justice; and it is not under any obligation to correct a mistake, although the fact of mistake appear ever so plainly, unless it also appear that its interference is necessary to prevent the perpetration of a fraud or some injustice; and the party asking relief must stand upon some equity superior to that of the party against whom he asks it. Regularly equity is remedial to those only who come in upon

an actual consideration, and therefore there should be some consideration, equitable or otherwise, express or implied. (1 Story's Eq. Juris. §§ 176 & 793.)

In this case the conveyances by Taylor were without any valuable consideration, and the circumstances detailed by the witness (Warson) did not imply any equitable or meritorious consideration; but, on the contrary, show that Taylor held the title to the lots in fraud of the rights of Warson's creditors, or at least under suspicious circumstances; and there being no other obligation upon Taylor to convey than such as those circumstances imposed, there is no sufficient reason for the interference of a court of equity to reform the defective deeds. (Fonblanque's Eq. 122, book 1, ch. 2, § 13; Grider v. Graham, 4 Bibb, 70; Deally's heirs v. Murphy, 3 Marsh. 475.)

Judgment reversed and cause remanded. Judge Bay concurs.

Judge DRYDEN. I think, as between the plaintiffs who were purchasers for value, and the defendants standing as the heirs and in the place of Taylor the grantor, in the deeds proposed to be reformed, the defendants ought not to be permitted to say these deeds, which on their face purport to be founded on a valuable consideration, are voluntary. I see no reason why the judgment should not be affirmed.

