S. Brocking et al., Respondents, *v.* J. N. Straat, Appellant.

### April 7, 1885.

1. Equity—Reformation of Deed—Mutual Mistake—Liens.—A court of equity will entertain an action to reform a deed, notwithstanding all the parties to the instrument are ready and willing to make the correction, where it is also sought to establish, in the same

action, the priority of a lien created by the deed over that of the judgment of the defendant.

2. —— MORTGAGES — PURCHASE FOR VALUE.—A mortgagee is a purchaser for value, although the mortgage was given for a pre-existing debt without new consideration; and is entitled to a reformation of the mortgage against a subsequent judgment creditor, upon a proper showing of mutual mistake.

3. —— PRACTICE.—A deed will not be reformed on the ground of mutual mistake, where the effect of a reformation would be to postpone a lien of the defendant, unless the evidence of the mistake of both parties to the deed is clear, although both parties thereto join in the petition.

4. —— AGENCY—EVIDENCE.—The mistake of a conveyancer in writing a deed will not warrant a court of equity in reforming the deed on the ground of mutual mistake, where it appears that the conveyancer acted merely by direction of one party to the deed.

5. —— EVIDENCE—CERTIFICATE OF ACKNOWLEDGMENT.—A certificate of acknowledgment of a deed by a proper officer can be overthrown only by direct and positive evidence.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Reversed and judgment.*

JOHN N. STRAAT and H. I. D'ARCY, for the appellant: 'A court of equity will not reform a deed, the mistakes of which "the parties thereto are ready and willing to correct."—*Laver* v. *Dennett*, 109 U. S. 98. One who is not a grantee for value has no standing in equity as against an innocent third person.—*Martin* v. *Jones*, 72 Mo. 26 ; *Fox* v. *Hall*, 74 Mo. 317. A deed, particularly an acknowledged deed (*Young* v. *Duvall*, 109 U. S. 577) will never be reformed on the evidence of interested parties alone.—*Fessenden* v. *Ockington*, 20 Me. Certainly not when the reformation is sought by one member of a family against another member who does not object, for the obvious purpose of defeating creditors, whose rights have intervened.—Bump on Fraudulent Conveyances, sect. 50; Pollock on Contracts, 455, ed. Wald.

W. B. THOMPSON, for the respondents: In the exercise of the jurisdiction of the court of equity to correct mistakes made by the grantors in a deed, the court will grant relief between the original parties and their privies

in estate or law; the only exception is in favor of *bona fide* purchasers without notice, and the judgment creditor does not for this purpose occupy the position of such a purchaser.—Story's Equity, sect. 165, 11th ed.; *Haley* v. *Bagley*, 37 Mo. 375; *Schwear* v. *Haupt*, 49 Mo. 225; *German Ins. Co.* v. *Grim*, 32 Ind. 249; *Cumming* v. *Freer*, 26 Mich. 138.

Rombauer, J., delivered the opinion of the court.

This is an action to reform a deed of trust, in regard to the description of property intended to be conveyed thereby and for incidental relief.

Plaintiffs aver in their petition that on January 28, 1879, George Rinkel, Jr., was indebted to Susanna Brocking for money loaned by her to him. That he executed to her a note for $2000.00 payable three years after date, and himself and his wife, Catharine, conveyed to Sutter, as trustee for said Brocking, to secure the payment of said note, lot 4 in block 4 of Gamble's Rose Hill subdivision, having a front of 217 by a depth of 358 feet, which property belonged to his wife, Catharine Rinkel.

That it was at that time agreed and was the intention of himself and wife to convey as such security, instead of such lot, another lot, which other lot was the property of George Rinkel, Jr., and that he instructed one Watson, who was the scrivener preparing the deed, to include therein such other lot, but that said Watson by mistake inserted in the deed the description of lot 4 in block 4 aforesaid, and himself and wife executed the deed thus prepared, believing that it conveyed the lot owned by him, George Rinkel, Jr. That Catharine Rinkel, whose property was thus conveyed by mistake, was in no manner liable for the debt to Brocking.

That all the plaintiffs are willing and ready to correct the mistake in such manner as the court shall direct.

The petition further states that on the 22nd day of October, 1879, the Real Estate Savings Institution obtained judgment against George Rinkel, Jr., for $20,990.-

94, which judgment the defendant claims to own, and that defendant has applied to the circuit court to sell the lot of George Rinkel, Jr., which was intended to be conveyed as aforesaid, and on which the homestead of said Rinkel is located.

The petition then prays for a reformation of the deed of trust as far as the description of the property conveyed is concerned, so as to substitute the lot owned by George Rinkel, Jr., for the lot owned by Catharine, his wife, and also for the release of the latter lot from the lien of the trust deed. The petition further prays that defendant may be enjoined from claiming any right, interest, or estate in preference to, or in priority of the rights of plaintiffs in the lot intended to be conveyed, and that defendant's judgment lien may be decreed by the court to be subordinate to the rights of the plaintiffs in the lot so intended to be conveyed, and for other and further relief, etc.

Defendant's answer denies the indebtedness of Rinkel to Brocking, and the execution of the $2,000 note mentioned in the petition. It admits the execution of the deed of trust, but denies that there was any mistake made in the description of the property; denies that plaintiffs are entitled to any relief; and asserts that defendant is the owner of the judgment for $20,990.94, and that such judgment is a lien on the lot of George Rinkel, Jr., superior to any lien which can be claimed thereon by the plaintiff, Brocking.

The cause was tried upon this petition and answer. Besides some documentary evidence hereinafter mentioned, plaintiffs introduced only George Rinkel, Jr., the grantor in the deed, and execution debtor, and Henry Watson, the scrivener who prepared the deed of trust sought to be reformed, as witnesses in support of the petition. Defendant offered no evidence.

George Rinkel, Jr., testified in substance that plaintiff, Brocking, was his wife's sister, and had been since infancy deaf and dumb. That he had collected some rents for her prior to the execution of the deed of trust,

·and owed her at the date of its execution about $2,500;
that he agreed with her to give security for this
·amount by a second deed of .trust on the lot on which his .ʹ
homestead was located ; that he employed one Watson to
draw the instrument and told him to make the deed to
his, Rinkel's, brother-in-law, the plaintiff, Sutter, and
not having the deeds with him at the time, told Watson
to get the description from the records.   That he exe-
cuted a deed on Watson's representations that it covered
his homestead, and then delivered it to plaintiff, Brock-
ing, and that he never saw the deed again until the fall
of 1883, when his attention was called to the matter by
defendant himself, who informed him that the deed of
trust did not cover his homestead.   That he thereupon
obtained the deed from Brocking, examined it, and dis-
·covered the mistake for the first time.

Rinkel further testified that lot 4 in block 4, being the
lot described in the deed of trust, belonged to his wife.
That neither himself, nor his wife, nor defendant, Brock-
ing, read the deed before he signed it, and that Sutter
was not present ; also that his wife had acted at times as
agent for Brocking.   On cross-examination he testified
that he had owed the money to Brocking for a number of
years ; that there was no judgment against him when he
made the deed, but that he was indebted to the Real
Estate Savings Institution at the time.

Henry Watson, the scrivener, testified that he was an
·attorney-at-law and notary, and that the $2,000 note and
deed sought to be reformed are in his hand writing.
That Rinkel told him he wished. to execute a deed of
trust of $2,000 on.the piece of ground belonging to him on
the St. Charles Rock Road, and fronting on such road
:215 feet, on which was his homestead.   Witness then
:stated "he did not have the deeds containing a descrip-
tion of the property and I came to the office of the
Recorder of Deeds of the city of St. Louis, and found the
plat which L now have before me, and I took from the
plat the description of the lot which I supposed was the
lot of the homestead.   I see now that I.made a mistake

in the description, because the lot owned by George Rinkel, Jr., was a lot of 215 feet front, and was not lot 4 of block 4, and the lot on which Rinkel's homestead is situate is west of this lot. I remember Rinkel and wife signed the deed of trust and Rinkel signed the note; all are in my handwriting. I told Rinkel the papers are all right. I now find I made a mistake in the description. I was requested to have the deed of trust recorded and I left it in the recorder's office for record. I never knew anything of the mistake until a short time before this suit was brought, and I was asked by Mr. Rinkel about it."

It appears from the plat of Rose Hill Addition which was given in the evidence that lot 4 in block 4 had a front of 100 feet, and the adjoining lot of George Rinkel, which was unnumbered, had a front of 216 feet, and that each lot had a depth of 358 $\frac{3}{12}$ feet.

The documentary evidence offered by plaintiffs consisted of deeds showing that lot 4 in block 4 had been conveyed to Catharine Rinkel, and was owned by her at the date of the execution of the deed sought to be reformed, and that the adjoining larger lot had been conveyed to George Rinkel, Jr., and was owned by him at that date. That the deed of trust sought to be reformed was acknowledged by George Rinkel, Jr., and Catharine, his wife, on the 28th day of January, 1879, the notary (Watson) stating in his certificate that the said Catharine Rinkel was examined by him separate and apart from her said husband, "*and made fully acquainted with the contents of the instrument.*" The deed was recorded on the 28th day of January, 1879.

Plaintiffs also gave evidence showing the recovery of the judgment by the Real Estate Savings Institution, its subsequent assignment to defendant, and the proceedings had by defendant to enforce said judgment against the lot owned by George Rinkel, Jr. The date of the judgment is October 22, 1879.

This being substantially all the evidence in the case, the trial court rendered a decree for plaintiffs, reforming

the deed of trust, and subrogating the lien of the judgment held by defendant to the lien of the deed thus reformed.    Defendant moved for a new trial and in arrest of judgment, which motions were overruled, whereupon he appealed to this court.

The first point made by defendant is, that there is no equity in the bill.   This conclusion is pressed upon us by the following argument:   The parties seeking the reformation and interested in the mortgage are all plaintiffs and state in their petition that *"they are willing and ready to correct said mistake in such manner as the court shall direct."*   It is contended that since the parties are all *sui juris*, and are willing to do what they asked the court to do for them, no sufficient reason is shown for the intervention of a court of equity.—*Laver* v. *Dennett*, 109 U. S. 98.   If the only object of the petition were the correction of the mistake, defendant's position would be well taken.   This, however, is only one of the objects of the bill.   The other is the correction of the mistake in a manner conclusive upon defendant, so as to enable the court to decree that the lien of the mortgage thus reformed creates a lien paramount to the lien of defendant's judgment.   This the parties plaintiff cannot accomplish by their voluntary action alone, and may for that purpose invoke the aid of a court of equity.— *Welton* v. *Tizzard*, 15 Iowa 495, 496.

While it is well settled in this state that a *bona fide* purchaser, who has failed to record his deed until after a judgment is obtained against his vendor, but who causes it to be recorded prior to the execution sale will hold against the purchaser at such sale (*Reed* v. *Ownby*, 44 Mo: 204), yet the deed to have such effect must have been executed prior to the rendition of the judgment.   If the plaintiffs in this instance, by their voluntary action, should execute a deed of correction, as between themselves, the title thus evidenced by the new deed would by relation take effect at the date of the original deed thus corrected.   This result, however, would not effect the *prima facie* right of lienors whose liens intervened

between the date of the execution of the original deed and that of the deed of correction. As against such liens the equity warranting the correction would still have to be established, either by a petition in equity or by an equitable defense made against the purchaser at the execution sale. Thus it would seem that the present action may be maintained, because the parties by it only seek to assert an equity against the judgment lienor now, which they would be compelled to assert against him at some other time.

The next point relied on by defendant is that the proof does not warrant the decree rendered, because it fails to show that plaintiff Brocking's equity is superior to that of defendant, and also fails to show that the mistake sought to be corrected was mutual, or a mistake of all the parties seeking the correction.

It is well settled that in order to entitle a party to a reformation of an instrument, the party seeking the relief must stand upon some equity superior to that of the party against whom he seeks it.—*Henderson* v. *Dickey*, 35 Mo. 126. If both the plaintiff, Brocking, and defendant are to be regarded in the light of creditors of George Rinkel, Jr., then their equities are equal, because no priority even in time is shown. But if the plaintiff, Brocking, is to be treated as a purchaser for value, then her equity is superior to that of defendant.

The evidence is clear that when the trust deed now sought to be reformed was executed, it was executed for the purpose of securing a debt of several years standing, and that the deed was supported by no new consideration. It was intimated in *Martin* v. *Jones* (72 Mo. 26), and decided by analogy in *Goodman* v. *Simonds* (19 Mo. 106, 117), that a party who parts with no new consideration is not a purchaser for value. In absence of any decision to the contrary, we would be inclined to hold on principle that plaintiff, Brocking, does not stand in the position of a purchaser for value, and that her equities are not superior to that of defendant. The law, however, in this state has been settled otherwise by a

case directly in point. In *Rhodes v. Outcalt* (48 Mo. 372), the court held, following the ruling made in *Welton* v. *Tizzard* (15 Iowa 495), that a mortgagee, although the mortgage is given for a pre-existing debt, and is supported by no new consideration, stands in the position of a purchaser for value, and is entitled as such to seek reformation of a deed against a subsequent judgment creditor. This decision, until overruled by the supreme court, is binding upon us.

On the proposition, however, that the proof fails to show that the mistake was mutual, the law under the case made is clearly with the defendant. The rule is so firmly established that no authorities need be cited in its support, that the reformation of an instrument will be decreed only when it is sought on the ground of mistake, on the clearest and most satisfactory proof of the mistake, and of the further fact that the mistake was mutual. If any case can be put which would call for the the most rigid application of the rule it is a case like the one at bar, where all the plaintiffs are members of one family, and where the reformation is sought exclusively in their own interest. The only party who occupies a hostile attitude is the defendant who is a judgment creditor. The only party who testifies to the mistake, is the judgment debtor who, by the reformation sought, seeks to shield his property from the judgment claim. He testifies only to his own mistake, and in that alone is he corroborated by the scrivener. Of the mistake of any of the other of the parties to the instrument, there is not a tittle of direct evidence, and the court must have found the mistake on their part by the merest inference. No reason is shown why Catharine Rinkel, the wife of the judgment debtor and alleged agent of Brocking, is not called. No reason is shown why Brocking herself is not called. Deaf and dumb though she be, there must be some method by which she can testify to her intentions regarding this transaction, as it is averred that the transaction actually accomplished was contrary to her intentions. Moreover it will be seen that the notary's certificate, attached to

the deed sought to be reformed, recites that Catharine Rinkel was by him "made fully acquainted with the contents of the said instrument." In *Young* v. *Duvall* (109 U. S. 577), it was held that if such certificate is contradicted, the proof to that end must be of such a character as will clearly and fully show that the certificate is false. Not only is Catharine Rinkel not called for the purpose of showing that she was not made fully acquainted with the contents of the instrument, but the notary who is called is entirely silent on the question, and in no wise impeaches the truth of his own certificate.

Plaintiffs' counsel contends that the rule which requires proof that the mistake was mutual does not apply to a case where the mistake is that of a scrivener. This argument springs from a misconception of methods of proof. Where it clearly appears that the scrivener acted by direction of both parties, he stands as agent of both parties to that extent, and satisfactory proof of his mistake is proof of the mutual mistake of the parties themselves. Where such facts were shown, proof of the scrivener's mistake was held sufficient as direct proof of a mutual mistake, and not as dispensing with such proof. To that extent the rule in regard to the scrivener's mistakes is logical and correct; beyond this, it is unsupported alike by reason and authority.

In the case at bar the scrivener received his directions from Geo. Rinkel alone. The evidence fails to show that he was employed by any one else, or instructed by anyone else. He and George Rinkel both testify that he did not draw the deed according to George Rinkel's directions, and there the proof stops. It is true that from all the surrounding circumstances an inference may be drawn which in ordinary trial of facts might justify a finding on the theory of probabilities. We are clear, however, that this cannot be done where the reformation of an instrument is sought.

As the evidence offered raises a probability of a mutual mistake, we will not dismiss the bill, but reverse the judgment and remand the cause for further proceedings.

Upon the new hearing the plaintiffs may succeed in establishing that the mistake was mutual, and the defendant will have an opportunity of resisting the reformation by whatever equities he may assert in his own favor, and against the incumbrance sought to be made available against him, and for that purpose may amend his answer if he is so advised.

Judgment reversed and cause remanded. All the judges concur.