TENN. VALLEY IRON & RAILROAD CO. *v.* A. M. PATTERSON
*et al.*

(*Nashville.* December Term, 1928.)

Opinion filed, March 16, 1929.

HAGGARD & HAGGARD, for appellant.

E. W. Ross, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the successors in title to W. J. Whitthorne to reform a deed whereby A. G. McDougal conveyed to said Whitthorne 54,016¾ acres of land in Wayne County. It was alleged that the deed failed to include some 1400 acres, title to which the parties intended to pass, and it was sought to have the description of the land contained in the deed corrected accordingly. McDougal died many years ago and his grandchildren, now holding title to the land by devise and inheritance, were made parties defendant to the bill.

The bill was dismissed by the Chancellor. The Court of Appeals reversed the decree of the Chancellor and granted the relief prayed upon condition hereafter mentioned. The defendants petitioned for the writ of *cer-*

*tiorari,* which was awarded by this Court, and the case has been argued here.

The complainants filed no petition for *certiorari,* and the defendants concede the determinative facts to be as found by the Court of Appeals. We accordingly accept as correct such findings by that Court.

The land sold was in one body comprising twenty or more adjoining entries. It was described in the deed by outside boundaries, with certain exclusions of land previously sold. The written contract of sale entered into between McDougal and Whitthorne, prior to the execution of the deed, showed that it was the intention of McDougal to sell and the intention of Whitthorne to buy, among other entries, entry No. 26. By an error of the surveyor, carried into the deed of McDougal to Whitthorne, the calls of said deed fail to include a strip of land 204 poles wide which lay along the southern margin of entry No. 26, this strip amounting to about 1400 acres, as before indicated.

The Court of Appeals finds that this sale was a sale by the acre, as distinguished from a sale in gross—a sale of 54,016¾ acres at $1.10 per acre. The purchase price of the land was paid on this basis by Whitthorne to McDougal. It is not alleged in the bill that there was any shortage in the acreage—that Whitthorne did not get as many acres as he paid for.

The successors in title of Whitthorne paid taxes on a large body of land, supposed to cover this 1400 acres, until the year 1916. Shortly before the year 1916, the Tennessee Valley Iron & Railroad Company, one of Whitthorne's successors in title, got into litigation with an owner whose land appears to have adjoined entry 26 which involved the location of the boundaries of the

parties. That litigation reached this Court and it was developed therein that the deed of McDougal to Whitthorne did not include the 1400 acres hereunder discussed, but that the title to said strip of land was in the devisees and heirs. of McDougal. Since the decree of this Court in the case mentioned, the grandchildren of McDougal have paid taxes on said strip of land. No possession has been maintained by any of the parties on the controverted strip. We gather from the record that it is wild land, valuable chiefly for the timber thereupon.

This suit for reformation was filed shortly after the decree of this Court in the other case in 1916. It has dragged along these many years owing, doubtless, to financial difficulty and receiverships involving the corporations that succeeded Whitthorne in title.

While the Court of Appeals held that the complainants were entitled to a reformation of the deed so as to make it include the 1400 acres, that Court found that complainants had not paid for said 1400 acres, and conditioned the reformation upon the payment by complainants for said 1400 acres at $1.10 per acre, with interest from the date of the McDougal deed to the date of the filing of the bill in this case.

We find ourselves unable to agree with the Court of Appeals that the complainants are entitled to have the deed reformed upon the facts stated.

(1) There is no doubt as to the jurisdiction of a court of equity in Tennessee to order the correction of an erroneous description in a deed when said error has resulted from a mutual mistake of the parties or when there has been a mistake of one party influenced by fraud of the other. *Pittsburg Lumber Co.* v. *Shell,* 136 Tenn., 466; *Baker* v. *Harlan,* 71 Tenn. (3 Lea), 505; *Graham*

v. *Guinn* (Ch. App.), 43 S. W., 749, and cases cited. To invoke this jurisdiction, however, the error sought to be corrected must have been a material error.

*(2)* The exercise of the power of reformation of written instruments is not an independent branch of equity jurisdiction but is only one remedy that the Court employs in the enforcement of its general jurisdiction in cases of fraud, accident and mistake. *Glass* v. *Hulbert,* 102 Mass., 24, 3 Am. Rep., 418, 23 R. C. L., 309.

*(3)* The relief sought in the case before us is predicated upon an alleged mistake of the parties. No fraud or other ground of equitable interposition is suggested. Whether a complainant seeks rescision, reformation or other relief on account of a written instrument in a Court of equity on the ground of mistake, the principles upon which the relief may be granted seem to be the same.

"A mistake as to a matter of fact to warrant relief in equity must be material and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The Court must be satisfied that but for the mistake, the complainant would not have assumed the obligation from which he seeks to be relieved." *Grymes* v. *Sanders,* 93 U. S., 55, 23 L. Ed., 798.

In his discussion of the application of the doctrine of mistake, Judge STORY makes this observation:

"The rule as to ignorance or mistake of facts entitling the party to relief has this important qualification, that the fact must be material to the Act or contract; that is, that it must be essential to its character; and an efficient cause of its concoction. For though there may be an accidental ignorance or mistake of a fact, yet if the Act or contract is not materially affected by it, the party claim-

ing relief will be denied it.'' Story's Equity Jurisprudence, sec. 141.

This language of Judge Story was quoted and approved and the qualification therein stated expressly recognized by this Court in *Trigg* v. *Read,* 24 Tenn. (5 Humph.), 529, 540.

Professor Pomeroy thus states the qualification of equitable jurisdiction in cases of mistakes:

''There are two requisites essential to the exercise of the equitable jurisdiction in giving any relief, defensive or affirmative. The fact concerning which the mistake is made must be material to the transaction, affecting its circumstance, and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. If a mistake is made by one or both parties in reference to some fact which though connected with the transaction, is merely incidental, and not a part of the very subject-matter, or essential to any of its terms, or if the complaining party fails to show that his conduct was in reality determined by it, in either case the mistake will not be ground for any relief, affirmative or defensive.'' Pomeroy's Equity Jurisprudence, sec. 856.

To the same effect see 23 R. C. L., 321, and cases collected in Notes 12 L. R. A., 273, 6 L. R. A., 836, 5 L. R. A., 152.

Applying the rule above stated to the facts before us, we cannot conclude that this is a case for the exercise of the equitable jurisdiction invoked. The contract between McDougal and Whitthorne contemplated sale by the former and purchase by the latter of more than fifty thousand acres of wild land. It seems to have been a purchase by Whitthorne for investment or speculative

purposes. There is no showing of any intention on the part of Whitthorne or his associates to immediately develop the property. There is no showing that the 1400 acres omitted from the deed had any peculiar value, or that any part of this vast tract of land was worth more than any other part. As found by the Court of Appeals, the sale was by the acre, and it is not charged that Whitthorne paid for any greater acreage then he got.

We must regard the omission of this 1400 acres in McDougal's deed as an immaterial circumstance. Such an acreage was insignificant in comparison with the entire tract. We are unable to see that Whitthorne's purchase of McDougal's land depended in the slightest degree upon the inclusion of the 1400 acre strip. We think the mistake did not affect the concoction of the transaction and that it had no influence on the conduct of either of the parties to the deed.

So far as complainants' bill discloses, Whitthorne got every acre for which he paid. The mistake of which his successors in title now complain is not of a character to induce a court of equity to undertake the delicate task of reforming a written instrument. We cannot see that the mistake has worked any injustice to Whitthorne or his successors.

The Supreme Court of Missouri has expressed itself in this way:

"A court of equity interferes to correct a mistake in a written instrument only for the furtherance of justice; and it is not under any obligation to correct a mistake, although the fact of a mistake appear ever so plainly, unless it also appear that its interference is necessary to prevent the perpetration of a fraud or some injustice." *Henderson* v. *Dicket,* 35 Mo., 120.

It is difficult to conceive of a case, where land has been sold by the acre and the purchaser has gotten all the acreage for which his deed calls and for which he has paid or undertaken to pay, in which a reformation could be had so as to make the deed include more land. We do not say that such a case might not arise upon exceptional circumstances. Neither our extensive investigation, however, nor the investigation of diligent counsel have disclosed any such case.

Other reasons suggest themselves which would induce this Court to hesitate before granting the relief prayed by the bill herein. Our conclusion, however, seems fully justified by the reason assigned, and it follows that the decree of the Court of Appeals must be reversed, the decree of the Chancellor affirmed, and this bill dismissed.