IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2021 Session

**IN RE ESTATE OF MARGIE ANN JOHNSON**

**Appeal from the Chancery Court for Sumner County**
**No. 2016-PR-211    Louis W. Oliver, Chancellor**

———————————————————

**No. M2020-00472-COA-R3-CV**

———————————————————

After the trial court found that a scrivener's error mistakenly listed the incorrect grantee on a warranty deed, it reformed the deed to list the correct grantee. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and ARNOLD B. GOLDIN, J., joined.

Grayson Smith Cannon, Gallatin, Tennessee, for the appellant, Laura Johnson Hamilton.

Philip C. Kelly, Gallatin, Tennessee, for the appellee, Gwynn K. Smith.[1]

**OPINION**

**I. Background**

On July 30, 1996, Margie Ann Johnson ("Decedent") and her husband, William (together with Decedent, the "Johnsons"), created the Johnson Joint Revocable Living Trust Agreement (the "Trust"), for the administration, investment, and distribution of their property. Decedent and her husband were both trustors and trustees of the Trust. The Trust named the youngest of the Johnsons' daughters, Kathryn Ann Hobdy ("Successor Trustee"), as Successor Trustee. The Johnsons' marital residence, located at 119 Biggs

_____

[1] Although listed as Appellees, Kathryn Johnson Hobdy, Ellen Akin Odle, and Sunset International Bible Institute neither filed briefs nor participated at oral argument before this Court.

Road (the "Biggs Road Property") was the only asset placed into the Trust. The Johnsons transferred their interest in the Biggs Road Property to the Trust via quitclaim deed, which they executed concurrent with the creation of the Trust in 1996.

On February 7, 2000, the Johnsons executed a "Restatement" of the Trust (the "Restatement"), amending Article VII, "Distribution After Death of Both Trustors." Under the Restatement, upon the death of both Decedent and her husband, the entire Trust would be distributed equally to Carolyn Lanise Akin, Ms. Hobdy, and Nathan Wade Johnson. Ms. Akin was one of the Johnsons' daughters, and Nathan Johnson is the son of Appellant Laura Hamilton, the Johnsons' estranged daughter. The Restatement explicitly provided that there was no provision made for distribution of the Trust to Appellant. The Restatement was recorded in the Sumner County Register's Office.

Mr. Johnson died on June 10, 2000. Thereafter, on September 11, 2002, Decedent executed a First Amendment to the Restatement (the "First Amendment"). The First Amendment deleted the "Distribution After Death of Both Trustors" provision and replaced it with a new provision that was triggered upon Decedent's death. The new provision named Ms. Hobdy and Nathan Johnson as income beneficiaries of the Trust during their lifetimes and distributed the remaining corpus to the Sunset School of Preaching (later renamed the Sunset International Bible Institute) upon Ms. Hobdy's and Nathan Johnson's deaths. The First Amendment was recorded in the Sumner County Register's Office.

Several years later, Decedent became incapacitated due to dementia and was unable to manage her personal affairs. On January 17, 2012, Ms. Hobdy petitioned the Chancery Court for Sumner County (the "Conservatorship Court") for conservatorship over Decedent. When Ms. Hobdy filed the petition, Decedent was residing in an assisted living facility. Attached as an exhibit to her petition was Ms. Hobdy's proposed property management plan (the "Plan") for Decedent's property. The Plan outlined the known assets and debts of Decedent as well as Decedent's monthly income and expenses. The Plan also suggested leasing out the Biggs Road Property to help pay for Decedent's care.

On January 19, 2012, the Conservatorship Court appointed a guardian ad litem ("GAL") for Decedent. On February 15, 2012, the GAL filed his report in which he concluded that Decedent required a conservatorship. Included in the report was mention of the Trust and the fact that "the only property placed into the [T]rust was the real property located at 119 Biggs Road . . . ." The GAL also recommended that the Conservatorship Court adopt the Plan so that Ms. Hobdy could rent the Biggs Road Property to pay for Decedent's care.

On February 28, 2012, the Conservatorship Court appointed Ms. Hobdy as Conservator over Decedent (the "Conservatorship") and adopted the Plan. Thereafter, Ms. Hobdy requested permission from the Conservatorship Court to sell the Biggs Road

Property and to use the proceeds to purchase a replacement dwelling for Decedent at 334 Jackson Road (the "Jackson Road Property"). The Jackson Road Property was next door to Ms. Hobdy's residence and, although Decedent was already receiving around-the-clock care, moving Decedent closer to Ms. Hobdy would allow Ms. Hobdy to provide additional care for Decedent. On May 20, 2013, the Conservatorship Court entered an order granting Ms. Hobdy permission to sell the Biggs Road Property and to purchase the Jackson Road Property on Decedent's behalf.

On November 27, 2013, Ms. Hobdy closed on both the sale of the Biggs Road Property and the purchase of the Jackson Road Property. The warranty deed for the Biggs Road Property listed the grantor as "Kathryn Ann Hobdy, Successor Trustee of the Johnson Joint Revocable Living Trust Agreement dated 7/30/1996 and as Conservator of Margie Ann Johnson." A different title company facilitated the closing on the purchase of the Jackson Road Property, and the warranty deed for that property conveyed title to grantee "Kathryn Johnson Hobdy, Conservator for Margie Ann Johnson" rather than to Ms. Hobdy as Successor Trustee of the Trust. On August 5, 2014, Ms. Hobdy filed a motion in the Conservatorship proceeding requesting permission to take out a home equity loan on the Jackson Road Property to help pay for Decedent's care. On August 12, 2014, an order was entered granting Ms. Hobdy's request.

Decedent died intestate on March 31, 2015 with her three daughters, Ms. Hobdy, Ms. Akin, and Appellant, as intestate heirs. On May 17, 2016, Ms. Hobdy filed a petition for letters of administration in the Chancery Court for Sumner County (the "trial court"), requesting, in part, that the trial court appoint Appellee Gwynn K. Smith, Ms. Hobdy's counsel during the Conservatorship proceedings, to serve as Administratrix of Decedent's estate. The petition also alleged, for the first time, that the Jackson Road Property was inadvertently conveyed to Ms. Hobdy as Conservator of Decedent rather than as Successor Trustee of the Trust. On May 31, 2016, the Estate of Margie Ann Johnson was admitted to probate for intestate administration, and Appellee was appointed Administratrix. During the estate's administration, Ms. Akin died, leaving her daughter, Ellen Akin Odle, as her only heir. Subsequently, Ms. Odle was substituted as a party to the lawsuit.

On June 30, 2016, Appellee filed a petition to determine ownership of real estate. Specifically, Appellee asked the trial court to determine whether the Jackson Road Property belonged to Decedent's estate or whether it was an asset of the Trust. On October 12, 2018, Appellant filed a motion for accounting and an answer to the petition to determine ownership of real estate. In her answer, Appellant alleged that the sale of the Biggs Road Property and the purchase of the Jackson Road Property were authorized under the Conservatorship Court's order and were, therefore, accomplished only under Ms. Hobdy's authority as Decedent's Conservator. Accordingly, Appellant averred that the Jackson Road Property did not belong to the Trust but was instead part of Decedent's estate.

On November 30, 2018, Appellee filed a "petition for judicial reformation of deed

or to divest real property out of estate of the deceased and into trust" (the "petition for judicial reformation"). Specifically, Appellee alleged that the deed for the Jackson Road Property "incorrectly listed Kathryn Johnson Hobdy only as Conservator for Margie Ann Johnson rather than conveying the property to her as Successor Trustee of [the Trust]," which was a mistake by the draftsman. On January 18, 2019, Appellant filed an answer opposing the petition. Appellant alleged that "the clear intention of the [Conservatorship Court] was to treat the property as property of [Decedent] subject to court administration and not subject to any Trust which may have been established in the past."

On February 12, 2020, the trial court heard Appellee's petition. Although neither party called witnesses, the trial court requested to hear testimony from Ms. Hobdy.[2] On February 19, 2020, the trial court entered an order finding, in pertinent part, that the closing attorney for the Jackson Road Property mistakenly titled the property in Ms. Hobdy's name as Conservator, rather than as Successor Trustee of the Trust. Accordingly, the trial court reformed the deed as follows: "Title to the [Jackson Road Property] be divested out of Kathryn Johnson Hobdy, Conservator for Margie Ann Johnson, and vested in Kathryn Johnson Hobdy, Successor Trustee of the [Trust]." Appellant appeals.

## II. Issues

Appellant lists two issues for review, which we restate as follows:

1. Whether Appellee, as Administratrix, had authority to bring the petition for judicial reformation, and whether filing the petition for judicial reformation was a breach of Appellee's fiduciary duty.

2. Whether the trial court erred in reforming the Jackson Road Property deed.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

### Appellee's Filing of the Petition for Judicial Reformation

---

[2] The trial court also heard brief testimony from Appellee.

- 4 -

Appellant's first issue for review concerns whether Appellee had authority to bring the petition for judicial reformation, and whether filing the petition was a breach of Appellee's fiduciary duty as Administratrix of Decedent's estate. As mentioned in Appellee's brief, and as counsel for Appellant admitted at oral argument before this Court, Appellant did not raise this issue in the trial court. Generally, "[i]ssues not raised in the trial court cannot be raised for the first time on appeal." *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)). Nevertheless, Appellant's counsel argued at oral argument that this issue concerned the trial court's subject matter jurisdiction because, as she alleges, the trial court "lacked authority to act on this property." While "the issues of subject matter jurisdiction may be raised at any time during the proceedings, by the parties or by the court, *Jack R. Owen Revocable Tr. v. City of Germantown*, No. W2018-01662-COA-R3-CV, 2019 WL 2233886, at *3 (Tenn. Ct. App. May 23, 2019) (citing *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *4 (Tenn. Ct. App. Nov. 30, 2010)); *see also* Tenn. R. App. P. 13(b), it appears that Appellant's issue primarily concerns whether Appellee had standing to bring the petition. In her appellate brief, Appellant argues that "[Appellee] . . . lacked any power or authority to act on the realty . . . ." However, for the sake of completeness, we will address whether the trial court had subject matter jurisdiction to hear Appellee's petition.

Subject matter jurisdiction "involves a court's power to adjudicate a particular controversy brought before it." *First Am. Tr. Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997)). "A court's subject matter jurisdiction is derived—'either explicitly or by necessary implication'—from the state constitution or statute. *Benson v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007). The existence of subject matter jurisdiction depends on 'the nature of the cause of action and the relief sought.'" *Jack R. Owen Revocable Tr.*, 2019 WL 2233886, at *2 (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Under Tennessee Code Annotated section 16-11-101, chancery courts are given "all the powers, privileges and jurisdiction properly and rightfully incident to a court of equity." Tenn. Code Ann. § 16-11-101. Further, "[t]he equitable or inherent jurisdiction of the [c]hancery [c]ourt includes all cases of an equitable nature" including "all actions for the reformation . . . of written instruments." *Gibson's Suits in Chancery* § 3 (7th ed. 1988). This Court has explained before that "[t]he [c]hancery [c]ourts of Tennessee have the inherent power and jurisdiction to reform instruments made through mistake, inadvertence or fraud." *Tudor v. Tudor*, 1985 WL 4039, at *2 (Tenn. Ct. App. Dec. 4, 1985), *aff'd*, No. 86-32-I, 1986 WL 13249 (Tenn. Nov. 24, 1986) (citing *City of Lawrenceburg v. Maryland Casualty Co.*, 64 S.W.2d 69 (Tenn. Ct. App. 1933); *Gibson's Suits in Chancery* § 991 (5th ed. 1956)). Being a court of equity, the trial court had jurisdiction to hear Appellee's petition for judicial reformation of the deed. We now turn to whether the trial court erred when it reformed the Jackson Road Property deed.

- 5 -

**Trial Court's Judicial Reformation of the Jackson Road Property Deed**

"The judicial alteration of the provisions of a written agreement is an equitable remedy known as 'reformation.'" *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) (citing *Greer v. J.T. Fargason Grocer Co.*, 77 S.W.2d 443, 443-44 (Tenn. 1935); *Tenn. Valley Iron & R.R. Co. v. Patterson*, 14 S.W.2d 726, 727 (Tenn. 1929)). Reformation "finds its roots in the maxim that 'equity treats that as done which ought to have been done.'" *Sikora*, 212 S.W.3d at 287 n.8 (citing 27 Williston on Contracts § 70:19 (4th ed.)). Accordingly, Tennessee courts employ reformation to modify a contract or deed to "conform to the real intention of the parties." *Sikora*, 212 S.W.3d at 287 (quoting *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968)). Generally, "[t]o reform a contract [or deed] based on mistake, a plaintiff must establish that the contract was executed under mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation." 27 Williston on Contracts § 70:93 (4th ed.); *see also* *Trent v. Mountain Com. Bank*, 606 S.W.3d 258, 263 (Tenn. 2020); *Sikora*, 212 S.W.3d at 286. "However, where there is no mistake about the agreement and the only mistake is in the reduction of the agreement to writing, such mistake of the scrivener or of either party, no matter how it occurred, may be corrected." 27 Williston on Contracts § 70:93 (4th ed.). A "scrivener's error," as it is termed, is a mistake in the expression of the contract and one which courts may readily revise. *See* *Sikora*, 212 S.W.3d at 287 (citing *Alexander v. Shapard*, 240 S.W. 287, 291 (Tenn. 1922)). Indeed, "[c]ourts of equity have long been sympathetic to the errant scrivener, and are willing to consider reformation where an attorney makes a mistake in drawing up an agreement." 27 Williston on Contracts § 70:93 (4th ed.).

In its order reforming the Jackson Road Property deed, the trial court found that the closing attorney mistakenly titled the property to Ms. Hobdy as Decedent's Conservator, rather than as Successor Trustee of the Trust, and that "[t]he property should have been placed in the [T]rust . . . ." We agree. As an initial matter, the trial court found that Ms. Hobdy's actions as conservator were also authorized under the Trust. The record supports this finding. Under the Restatement of the Trust, as Successor Trustee, Ms. Hobdy was authorized, in pertinent part, to: (1) distribute Trust principle or income for the health, maintenance, and support of the disabled Trustor; (2) cause any real property belonging to the Trust to be held in the Successor Trustee's name; (3) borrow money from any lender and to mortgage or pledge any property in the Trust; (4) sell the Trust's real property at private or public sale; and (5) perform other acts necessary or appropriate for the proper administration of the Trust, including executing and delivering necessary instruments.

Although she sought permission from the Conservatorship Court, Ms. Hobdy had authority to sell the Biggs Road Property and to purchase the Jackson Road Property as Successor Trustee of the Trust. While the two properties were sold and purchased for Decedent's benefit, importantly, the Conservatorship Court never concluded that either property belonged to Decedent individually. Rather, the court's order merely stated that Ms. Hobdy had the authority to sell the Biggs Road Property and to purchase the Jackson

Road Property "on behalf of the Ward [(Decedent)]." Indeed, such authority was vested in Ms. Hobdy through both (1) the Conservatorship Court's order concerning the sale and purchase of real property, and (2) the Trust.

Ms. Hobdy's testimony at the hearing on the petition for judicial reformation demonstrates that she was aware of her powers and duties as Successor Trustee.[3] Ms. Hobdy testified that she knew the Biggs Road Property belonged to the Trust when she filed the petition to be appointed conservator of Decedent. Ms. Hobdy further testified that she informed the Conservatorship Court of such at the hearing on her motion to sell the Biggs Road Property and to purchase the Jackson Road Property. Importantly, Ms. Hobdy testified that she intended for the Jackson Road Property to be placed into the Trust and asked the title company to title the deed in the same manner as the Biggs Road Property. However, the closing attorney inadvertently and mistakenly titled it to Ms. Hobdy as Conservator of Decedent. Ms. Hobdy testified that she did not realize this mistake until after Decedent's death.

In its final order, the trial court found that it had "no reason to doubt [Ms. Hobdy's] testimony" and that "[t]here was no showing of unclean hands." This Court is "required to defer to the trial court's credibility findings . . . ." **Williams v. City of Burns**, 465 S.W.3d 96, 120 (Tenn. 2015); *see also* **Street v. Street**, No. E2016-00531-COA-R3-CV, 2017 WL 1177034, at *7 (Tenn. Ct. App. Mar. 29, 2017). In **Wells v. Tennessee Board of Regents**, 9 S.W.3d 779 (Tenn. 1999), the Tennessee Supreme Court explained that

> trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See* **State v. Pruett**, 788 S.W.2d 559, 561 (Tenn. 1990); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See* **Tenn-Tex Properties v. Brownell-Electro, Inc.**, 778 S.W.2d 423, 425-26 (Tenn. 1989); **Mitchell v. Archibald**, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See* **Humphrey v. David Witherspoon, Inc.**, 734 S.W.2d 315, 315-16 (Tenn. 1987); **Bingham v. Dyersburg Fabrics Co., Inc.**, 567 S.W.2d 169, 170 (Tenn. 1978).

**Wells**, 9 S.W.3d at 783. Therefore, we defer to the trial court's finding that Ms. Hobdy's testimony was credible.

---

[3] We note that a statement of the evidence was filed in lieu of the hearing transcript. *See* Tenn. R. App. P. 24(c).

Notably, Appellant offered no proof to contradict the evidence that the Jackson Road Property should have been titled to Ms. Hobdy as Successor Trustee of the Trust. Rather, Appellant's argument hinges on her speculation that, although it never *explicitly* made such findings or conclusions, the Conservatorship Court nonetheless *intended* to divest real property from the Trust and transfer it to Ms. Hobdy solely as Conservator of Decedent. In her brief, Appellant states that, "[w]hile no evidence was presented of the Conservatorship Court's intent, a [c]ourt speaks through its orders." *See Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977) ("No principle is better known than that which states that a [c]ourt speaks through its orders."). As proof of the Conservatorship Court's intention, Appellant points to the court's language authorizing the purchase of the Jackson Road Property "on behalf of the Ward [(Decedent)]." Although the Conservatorship Court's order neither mentioned the Trust nor directed how to title the Jackson Road Property upon purchase, Appellant argues that the court's language, "on behalf of the Ward [(Decedent)]," somehow demonstrates the trial court's implicit intention to divest real property from the Trust and transfer it to Ms. Hobdy solely as Conservator of Decedent. Such conclusion strains credulity and asks this Court to speculate as to the Conservatorship Court's intention rather than to rely on the explicit language in the court's order. Such reading would be in direct contravention of *Palmer*, *see id.*, and we decline to speculate on the Conservatorship Court's intention when we need only look at its order.

As discussed, *supra*, the Conservatorship Court never found that the properties belonged to Decedent individually. Rather, as the trial court explained, the Conservatorship Court merely declared that Ms. Hobdy "had the right to sell [property] as the conservator." Indeed, Ms. Hobdy was authorized to sell and purchase property on Decedent's behalf not only as Decedent's Conservator, but also as the Successor Trustee of the Trust that held the real property. The record shows that, when Ms. Hobdy acted on this authority, she requested that title to the Jackson Road Property be transferred to the Trust. According to the record, the only reason the property was titled to Ms. Hobdy as Decedent's Conservator was because the closing attorney made a mistake. This is a simple case of scrivener's error and nothing more.

Appellant also appears to argue that the trial court erred in reforming the deed because "[t]here was no proof regarding the intent of the other parties to the transaction," i.e., the sellers. Because title to the Jackson Road Property had already been transferred from the sellers to Ms. Hobdy as Decedent's Conservator, nothing remained with the sellers so as to make them necessary parties. *See Alexander*, 240 S.W. at 295. Furthermore, neither Ms. Hobdy nor Appellee ever alleged that the Jackson Road Property deed failed to correctly reflect the agreement of the parties. Rather, the only allegation was that the closing attorney, who drafted the deed for the Jackson Road Property, inadvertently conveyed the property to Ms. Hobdy as Decedent's Conservator, rather than to Ms. Hobdy as Successor Trustee of the Trust. Such allegation involves a mere scrivener's error, which the court may easily correct. 27 Williston on Contracts § 70:93 (4th ed.); *see also Sikora*, 212 S.W.3d at 287 (citing *Alexander*, 240 S.W. at 291). Accordingly, based on the

evidence in the record, we affirm the trial court's reformation of the Jackson Road Property deed.

## V.  Conclusion

For the foregoing reasons, we affirm the trial court's order reforming the Jackson Road Property deed.  The case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed to the Appellant, Laura Johnson Hamilton, for all of which execution may issue if necessary.


          s/ Kenny Armstrong
          KENNY ARMSTRONG, JUDGE