## MERCHANTS' & MANUFACTURERS' INTER-INSURANCE ALLIANCE et al. v. HANSEN.  (No. 8949.)*

(Court of Civil Appeals of Texas.  Dallas.
Jan. 5, 1924.  Rehearing Denied
Feb. 9, 1924.)

1. **Appearance** ⊂⇒24(1)—**Filing answer to suit on policy held waiver of omission of pleas for reformation from certified copy of petition served on defendants.**

Where insurers took cognizance of a suit against them on a policy and duly appeared by filing an answer at the succeeding term, the court did not err in overruling their motion to strike out the petition because the certified copy served on them did not contain pleas for reformation of the policy.

2. **Continuance** ⊂⇒29—**Overruling motion on ground of surprise held not abuse of discretion.**

Where a petition containing allegations not contained in the certified copy served on defendants was on file for about 13 months and defendants did not affirmatively show, in their application for continuance on the ground of surprise, that there was any other evidence they could offer if the continuance were granted, the court did not abuse its discretion in overruling the motion.

3. **Reformation of instruments** ⊂⇒32—**Contract may be reformed after loss within policy as reformed.**

A suit to reform an insurance contract may be maintained after a loss has occurred which would fall within the policy as reformed.

4. **Insurance** ⊂⇒143(3)—**Policy may be reformed for mutual mistake or fraud of one party and mistake of other.**

An insurance policy, like other contracts, may be reformed for mutual mistake, or fraud of one party and mistake of the other.

5. **Reformation of instruments** ⊂⇒45(14)—**Evidence of mutual mistake must be clear and convincing.**

When mutual mistake is relied on for reformation of an insurance policy, the evidence

must be clear and convincing that the contract as written was not that which the parties entered into and believed had been expressed by the written draft.

**6. Evidence ⚖➡66—Reformation of instruments ⚖➡43—Insured accepting policy without dissent presumed to have known its contents; insured has burden of showing ignorance of contents of policy.**

Insured accepting a policy without dissent is presumed to have known its contents, and the burden is on him, in a proceeding to reform it, to overcome such presumption by proof to the contrary as by showing that when he received the policy he put it away without examination or relied on insurer's knowledge and supposed that he had correctly drawn it.

**7. Insurance ⚖➡143(8)—Possession of policy by insured held no bar to reformation.**

Where insured, on receiving the policy, put it away without reading or examining it, or having it read to him, and relied on the knowledge of insurer's agent for a policy in conformity to insured's demand and supposed the agent had seen that it was correctly drawn, the fact that insured had the policy, with a rider excluding certain risks, in his possession for about four months, did not prevent him from seeking reformation.

**8. Reformation of instruments ⚖➡45(14)—Evidence of mutual mistake as to risks covered by insurance policy held sufficiently clear to warrant reformation.**

Evidence *held* sufficiently clear and convincing to warrant reformation of an automobile insurance policy for mutual mistake of insurer's agent and insured's wife as insured's agent in not procuring a policy covering loss by fire or theft.

**9. Insurance ⚖➡87—Agent's mistake in failing to deliver full coverage automobile policy held that of insurer; "full coverage."**

The mistake of an agent authorized to solicit and sell insurance, forward applications to his principal, deliver policies to insured and collect premiums, in failing to deliver to insured a full coverage automobile policy *held* insurer's mistake, for which reformation was warranted; a full coverage automobile policy meaning one insuring against risks of fire, theft, collision, property damage, and indemnity on owner's liability.

**10. Costs ⚖➡238(3)—Appellee remitting excessive amount awarded held not chargeable with cost of appeal.**

Where a mistake in calculating interest on the amount awarded plaintiff was not called to the court's attention, and plaintiff, before submission of the case on defendants' appeal, filed a remittitur of an excessive amount awarded in consequence of such mistake, plaintiff will not be taxed with the cost of the appeal on affirmance of the judgment, which will be reformed by deducting such amount.

Appeal from District Court, Dallas County; Royal R. Watkins, Special Judge.

Action by C. Hansen against the Merchants' & Manufacturers' Inter-Insurance Alliance and another. Judgment for plaintiff, and defendants appeal. Reformed and affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for appellants.

Currie McCutcheon, of Dallas, for appellee.

JONES, C. J. In a suit in the district court of Dallas county, appellee, C. Hansen, recovered a judgment on an insurance policy issued by appellants, the Merchants' & Manufacturers' Inter-Insurance Alliance and the Merchants' & Manufacturers' Lloyd's Exchange, in the sum of $859.07, with interest at the rate of 6 per cent. per annum from date of judgment, from which judgment appellants have duly perfected their appeal to this court.

The facts on which this suit is based are as follows:

Appellee had just purchased a five-passenger Oakland touring automobile when W. J. Patterson, the agent in Dallas of appellants, on or about the 9th of August, 1919, called Mrs. C. Hansen, the wife of appellee, over the telephone and solicited insurance on the car. She informed the said agent that they desired insurance on the car and wanted a "full coverage" policy. Such a policy means, and was understood by the parties to mean, a policy that insures against risks of fire, theft, collision, property damage, and indemnity on owner's liability. These negotiations resulted in the issuance by appellants to appellee of the original policy on appellee's car, which, however, contained a rider excluding from the risks assumed those of theft and fire. The testimony is clear that appellee and his wife, who acted as his agent in the matter of procuring the insurance, demanded from the said agent a "full coverage" policy and relied upon him to secure for them such policy; they were ignorant of insurance matters, and, when assured that they were having a "full coverage" policy, accepted the policy as written without examining it and placed it in a secure place at home. The said agent explains that in the conversation with Mrs. Hansen it developed that the Oakland Company, the seller of the car, had a mortgage on it to secure an unpaid balance, and that he knew at the time that the seller of the car, following an unvarying custom, had taken out a policy against fire and theft, and that, by reason thereof, he could not write a policy covering those two items; that, however, by reason of this policy against fire and theft taken out by the Oakland Company, appellee, with the policy he was writing, would have full coverage and that in all probability he did assure Mrs. Hansen that she would

have full coverage insurance, meaning that this was the result of the policy issued by appellants and the policy secured by the Oakland Company. He did not explain to appellee or his wife that that was the result of the two policies issued on the car, and let them erroneously believe that full coverage on the car resulted from the policy he secured. There was a written application for this original insurance that excluded the risks of fire and theft, but this application was not prepared by appellee or his wife, and they never saw it. It was written out by the said agent in his office in the absence of both appellee and his wife and on information which he secured from Mrs. Hansen and what he knew of the said custom of the Oakland Company, and the name of appellee was signed to the application by the said agent. This insurance was in the sum of $1,000 and ran for one year from August 9, 1919, to August 9, 1920. Appellee knew that the Oakland Company had taken out a policy of insurance. He and his wife assumed that the policy issued in its favor was only for its benefit to secure it in the deferred payments, and did not know that by reason of this insurance a policy could not be taken out by appellee to cover, for his benefit, these risks against fire and theft.

Before this original policy issued by appellants had expired, the mortgage on the car had been fully paid off and the insurance policy which theretofore had been held by the Oakland Company was sent to appellee. It was not read, but placed in the same receptacle in which the policy appellee had secured had been placed. At the expiration of this original policy issued by appellants there was no other insurance on appellee's automobile, the policy secured by the Oakland Company having previously expired. The premium on the original policy at the time it was issued, and for the risks it insured, was $80, which sum was at once paid by check made payable to Patterson, the said agent. The premium for a full coverage policy at this time was $87.50, but this fact was unknown to appellee or his wife. At the time this policy was issued, appellee was informed by the said agent that he would be entitled to a $20 discount on the renewal policy.

Just before the expiration of this policy, appellants prepared and sent to the agent Patterson a renewal covering only the same items of risk which the original policy covered. As in the original policy, the exclusion of fire and theft was effected by a rider attached to the policy. When the agent received this renewal policy in Dallas, he called Mrs. Hansen over the telephone and told her that the policy had expired and asked if she wanted a renewal. To this request he received an affirmative answer, provided it was a "full coverage" policy and just like the former one. She, however, insisted on knowing whether the renewal was a "full coverage" policy. The agent, she says, assured her it was, and the renewal policy was sent to appellee, received by his wife and placed, unopened, with the expired policy for safe-keeping. On this renewal policy, appellee and his wife relied upon the agent to have written for them the character of policy they desired, and fully believed that he had done so.

On or about December 1, 1920, this car was stolen, and, while in the hands of the thief, caught fire and was completely burned. The agent Patterson was at once notified of this fire, and, after a telephone conversation with Mrs. Hansen, in company with appellants' adjuster went out to the house and examined the policy then in existence, together with the two expired policies, with the result that Mrs. Hansen was later informed that the policy did not cover damage by either theft or fire, and that appellants would not pay anything on the loss. This was the first knowledge appellee and his wife had of this deficiency in the policy.

Appellants' agent, Patterson, was required by his contract to keep a book in which he should record all business transacted by him, and make a weekly report of such business to the home office at Galveston. This duty was performed by him and the book recorded the renewal policy and described it as a "full coverage" policy. The agent explains that this record was made for the reason that the premium charged for the renewal was the amount charged at the date of its issuance for a "full coverage" policy. There is no other evidence in the record as to what this rate was on August 9, 1920. The agent Patterson wrote a letter to appellee at the time of appellants' denial of liability, informing them that appellants would not pay them anything because their policy did not include fire and theft, and stated that "this is most regrettable error on both your part and mine in not examining closely the coverages under the policy."

Appellee's petition, after declaring on the said renewal policy as written, except as to a declaration that the rider placed on the policy was null and void, contained an alternative plea in which he sought a reformation of the policy on the ground that the rider was attached to said policy through mutual mistake of appellants and their said agent, alleging that at the time the contract was made it was agreed and understood that the policy should contain no such limitation, and that because of said mutual mistake the policy should be reformed so as to include liability for fire and theft to the extent of $1,000. By a second alternative plea appellee sought reformation of the policy on the ground that the policy sued upon contained a rider excluding liability for fire and

theft coverage through mutual mistake of the parties and through the mistake on the part of appellee and fraudulent representations on the part of appellants and their agent. Recovery was really only predicated on the policy as reformed.

Appellants answered by general demurrer, special exceptions, general denial, and specially to that portion of the petition which sought a reformation of the policy. Their answer in reference to this issue of reformation was full and complete and sufficient to raise all the issues upon which they seek a reversal of this case.

The case was tried to a jury and submitted on special issues in the form of five interrogatories propounded to the jury. In answer to these interrogatories the jury found: (1) That the appellants, through their agent W. J. Patterson, agreed with Mrs. Hansen that the policy of insurance on appellee's automobile was to include a liability of $1,000 for loss of said car by fire and theft; (2) that the failure of said policy to contain the $1,000 fire and theft liability clause was caused through the mutual mistake of the appellants' agent, W. J. Patterson, and either appellee or his wife; (3) that appellants' agent, W. J. Patterson, represented to Mrs. Hansen prior to the delivery to her of the policy involved in this suit, and the acceptance of same, that said policy provided insurance on the automobile involved herein to the amount of $1,000 for loss by fire and theft; (4) that appellee, through his wife, relied upon said representations in accepting said policy; (5) that the reasonable value of appellee's automobile at the time it was burned at Dallas, Tex., was $750.

With these findings of the jury as a basis, the court entered judgment against appellants in the sum of $859.07. This amount representing the $750 and the computed interest thereon at 6 per cent. per annum from December 1, 1920, the date of the fire, to May 3, 1922, the date of the judgment. There was an error of $44.95 in computing the interest, and the judgment is excessive in said sum. This error was not called to the attention of the trial court.

Appellee has filed a remittitur in this court in said amount, and asks that the judgment be reformed as to amount and that recovery be allowed in the sum of $814.12 instead of $859.07.

When appellants were served with citation in this suit, they were served with what purported to be a certified copy of the original petition. The case went to trial on the original petition. For some reason not explained in the record, the certified copy served on appellants did not contain the pleas for reformation of the policy of insurance, and neither appellants nor their attorneys knew that there were such counts in the original petition until appellee's counsel read the petition to the jury at the trial of the case. Appellants' counsel at once filed a motion to strike out said petition because of the incorrectness of the certified copy served on appellants, and for the further reason that neither appellants nor their counsel had knowledge of the fact of said error, and for the further fact that, as appellee had filed no amended petition, there was nothing to place them on notice of the error in the copy served on them. This motion was overruled, and appellants at once sought to withdraw their announcement and continue the case on the ground of surprise based on the facts stated in the motion, and on the further ground that they had not had time to investigate the suit as made by the petition filed. The court overruled this application. The original petition as read to the jury was filed on April 11, 1921, more than a year before the case went to trial in May, 1922.

The questions involved upon this appeal are: (1) Did the trial court err in overruling appellants' motion to strike out appellee's petition because appellants were served with an erroneous certified copy? (2) Was there an abuse of discretion of the trial court in refusing to grant the application for a continuance because appellants did not know of the issues made by the appellee's petition in the plea for reformation of the insurance contract until the reading of the petition before the jury at the beginning of the trial? (3) Was the trial court in error in holding that the reformation of an insurance contract could be decreed on the mutual mistake of the insured and a local agent of the insurer, when the local agent's authority did not extend to issuing or writing policies, but was confined to soliciting and taking applications for insurance, forwarding the same to his principal, delivering the policy when issued by his principal, and collecting the premiums thereon? (4) Where a judgment is excessive in amount, and which excessive amount is occasioned solely by a miscalculation of interest allowed on the principal amount of the judgment, and this error is not called to the attention of the trial court, should cost of appeal be taxed against appellee where appellee voluntarily files in this court a proper remittitur?

Appellants duly assigned error on the ruling and holding of the trial court on each of these matters, and duly presented their contentions in respect thereto to this court by timely propositions and appropriate statements from the record. These questions will be taken up in the order in which they are named above.

[1] Though not required to do so because of the deficiency of the certified copy served on them, still, appellants took cognizance of the suit filed against them and duly made

their appearance in the trial court by filing an answer at the succeeding term. There was no error in the action of the trial court in overruling the motion to strike out appellee's petition in view of this fact. This assignment of error is overruled.

[2] We do not believe there was an abuse of discretion of the trial court in overruling the motion to continue. For approximately 13 months appellee's petition had been on file in the trial court containing the allegations alleged to be a surprise. Appellants in such application did not affirmatively show that there was any other evidence they would be prepared to offer if the continuance had been granted. Because of this failure to allege affirmative facts which would show that injury would result to them unless a continuance was granted, this assignment of error is overruled.

[3-6] A suit for reformation of a contract of insurance may be maintained after a loss has occurred which would fall within the policy as reformed. Delaware Ins. Co. v. Hill (Tex. Civ. App.) 127 S. W. 283; Joyce on Ins. § 3509; 14 R. C. L. p. 903. The grounds upon which reformation is allowed are those common to contracts in general, to wit, mutual mistake of the parties or the fraud of the one party and the mutual mistake of the other. When mutual mistake is relied upon, the evidence must be clear and convincing that the contract as written was not the contract which the parties thereto had entered into, and which they believed had been expressed by the written draft of the contract. So far, the authorities in different jurisdictions are in general agreement. The rule obtains in this state that, if the insured accepts a policy without dissent, it is a presumption of fact that he knew its contents, and the burden is upon him to overcome such presumption by proving that he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed that he had correctly drawn it. Delaware Ins. Co. v. Hill, supra.

[7, 8] In the instant case the facts as related above show that appellee put the policy away without reading or examining it or having it read to him, and that he relied upon the knowledge of the agent of the insurer for a policy in conformity to his demand and supposed that the agent had seen that it was correctly drawn. The fact that appellee had the policy in his possession with the rider on it excluding the risks of fire and theft from its provisions for a period of about four months, in view of the above facts, did not operate to prevent his seeking a reformation of the contract. The evidence is sufficient to sustain the findings of the jury that appellee, through his wife as his agent, and W. J. Patterson, as agent for appellants, agreed that the renewal policy of insurance on appellee's car was to include a liability of $1,000 for loss of said car by fire or theft as well as the three items of liability specifically included in the policy issued; and, further, that the failure of the said policy to contain the $1,000 fire and theft liability clause resulted from the mutual mistake of the agent Patterson and appellee's wife; and, further, that the said Patterson represented to appellee's wife, prior to the delivery of the policy and acceptance of same, that said policy did provide said insurance and that in accepting said policy appellee's wife relied upon these representations. The positive testimony of appellee and his wife was to this effect, and the entry by Patterson in the book required to be kept by him under his employment that said policy was for "full coverage," which could only be the case provided it did include both fire and theft, shows at least that at the time he delivered the policy he believed he was carrying out the demands of appellee and was delivering a full coverage policy. The agent's further testimony that the price paid for this renewal policy was the price of a full coverage policy is further evidence that said agent believed he was delivering a full coverage policy in compliance with the agreement between himself and appellee as to the insurance appellee wanted. This evidence is sufficient to fulfill the requirement of the rule that an insurance policy will not be reformed except on clear and convincing evidence.

[9] The more difficult question is the one as to whether the mistake of Patterson can be ascribed to the companies he was empowered to represent. His contract with appellants is set out in the record. From this contract it appears that Patterson's power was to solicit and sell insurance, forward to appellants the application for insurance sold, deliver the policy to the insured when it was written and returned by appellants, and collect the premiums therefor. It affirmatively appears from the contract that Patterson did not have power to write and issue the policy. The question then is: Will the court decree a reformation of this policy of insurance so as to cause it to cover a loss by fire and thereby permit a recovery for such loss when the policy as originally written did not include such risk, because of the mutual mistake of appellee and appellants' said agent?

We have been cited to no case deciding this precise question in insurance contracts by any higher Texas court. In other states the decisions are not in agreement on this question. In the case of Delaware Ins. Co. v. Hill, supra, in which case the Supreme Court denied a writ of error, the court affirmed the judgment allowing a reformation

of the contract so as to permit recovery on items of loss omitted from the contract of insurance through the mutual mistake of the agent and the insured. The agent in the reported case, however, had authority to, and did in that case, write and issue the policy himself. The court does not discuss the question as to whether or not such reformation could have been had if the mutual mistake had been that of only a soliciting agent with the powers of the agent in the instant case. At the time the renewal policy was issued in this case, there was no written application for insurance sent appellants, and indeed no request sent for the issuance of this policy. It is a fair inference to draw that the policy was merely written up by appellants at their home office and sent to their agent Patterson to form a basis for a new contract of insurance with appellee. They intrusted their said agent with the power of securing from appellee another contract of insurance. Appellants' printed forms for their policies included the risks of fire and theft, and the exclusion of these risks had to be done by an attached rider.

Clothed with the power by appellants to solicit and contract for such a policy, Patterson agreed with appellee to deliver to him an insurance policy embracing full coverage. This agent knew that the latter was the only kind of policy appellee wanted, and he agreed with appellee that appellants would deliver to him such a policy. The said agent and appellee believed that this agreement was carried out by the terms of the policy which had theretofore been sent to the said agent, and, so believing, it was delivered by the agent as such policy and so accepted by appellee. There is nothing in the evidence to indicate that appellants would not just as readily have issued the full coverage policy. This case, therefore, does not come under the rule of a mere mistake of the parties in what a written contract theretofore entered into actually contained, for there was no contract previous to this agreement between the appellant and the agent, but it comes strictly within the rule as to a mistake in making the written contract express in writing what the parties intended it should contain.

As before stated, the decisions in other states differ as to whether a policy may be reformed where it does not conform to the agreement of the parties through mistake which, so far as the insurance company is concerned, was that of a mere soliciting agent with no power to issue a policy. The weight of authority is that such reformation will be allowed where the mistake is that of such mere soliciting agent. 14 R. C. L. p. 902, 903. See authorities collated under "Note to Decisions" in 11 L. R. A. (N. S.) at page 357.

To our mind these authorities announce the better reason for their conclusion. The soliciting agent is the one intrusted with the power to make the agreement with the insured as to the character of policy to be issued, and the agent, and not the insured, is the one charged with the duty of correctly informing the principal of the desire of the insured in this respect and the agreement he has made with the insured. The insurer in fact impliedly gives a warrant to the insured that such agent will correctly report his demand as to the character of policy wanted and that it will faithfully issue same. We hold, therefore, that the mistake of the agent Patterson was the mistake of appellants, and the assignments of error in respect to this issue are overruled.

[10] It is insisted by appellants that in any event appellee should be taxed with the cost for the reason that the judgment as entered was excessive in the amount of $44.95. As stated above, this was a mistake in calculation of interest and was not called to the attention of the trial court, and is first complained of in this court as fundamental error. It is inconceivable that this mistake would not have been corrected by the trial court, had it been called to such court's attention. Before the case was submitted, appellee filed a remittitur in the sum of $44.95 and asked that the amount of the judgment be lessened by that sum because of such mistake. Under these circumstances, appellants must be charged with the cost of this appeal. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 509; Sweet v. Lyon et al., 39 Tex. Civ. App. 450, 88 S. W. 384.

The judgment will be reformed in respect to amount, and the sum of $44.95 will be deducted from $859.07, the amount of the judgment, and judgment here rendered for the sum of $814.12, with interest on said judgment at the rate of 6 per cent. per annum from May 3, 1922. In all other respects the judgment will be affirmed.

Reformed and affirmed.