MERRIAM *v.* NATIONAL LIFE & ACCIDENT INS. CO. *et al.*

(*Knoxville,* September Term, 1935.)

Opinion filed Oct. 15, 1935.

Raulston & Raulston, of Jasper, for Ernest B. Merriam.

Tom C. Kelly, of Jasper, for administrator.

Mr. Justice Chambliss delivered the opinion of the Court.

This is a contest between complainant Merriam and Thomas C. Kelly, administrator of the estate of Robert E. Knight, over the proceeds of life insurance in the defendant company, procured by Knight and carried by him on his life in the net sum of $2,000, which the company, interpleading, has paid into court. The original bill was filed by Merriam, to which, with certain allowed amendments, the administrator demurred. The chancellor overruled the demurrer and allowed an appeal.

The policy, which was in the physical possession of complainant Merriam, on its face named as the beneficiary, "Estate of the insured," and it is upon this that the administrator relies. However, the bill charges, and the application signed by the insured shows on its face, that Ernest B. Merriam was therein named as the beneficiary, "age forty, relationship none," and it is charged that the original contract for the insurance between the parties was changed fraudulently and unlawfully by the insurance company, without the knowledge or assent of

the insured, so as to designate as beneficiary the "Estate of the insured." It was charged that the policy was delivered to and received by the deceased without any notice or knowledge on his part that this change had been made; that he delivered the policy to the beneficiary he had named and paid monthly premiums thereon for nineteen months, until his death by accident, under the impression that the contract he had made with the insurance company was in force as he had made it.

The insistence is that in view of the recital on the face of the application that the beneficiary named therein by the applicant had no relationship to the insured, the company, apparently on the theory that the named beneficiary was without insurable interest in the life of the applicant, changed the beneficiary, when issuing the policy, in exercise of an option reserved on the face of the application reading as follows:

"In the case of apparent errors or omissions discovered by the company in the foregoing application, or in the event the company is unwilling to issue a policy upon the plan in the rating class, or the amount applied for, the Company is hereby authorized to amend this application by noting the change in space 15, of Part 1 hereof, and to prepare and submit the policy on a different plan in a different rating class or in a different amount from that applied for; and I agree that my acceptance of such policy, accompanied by a copy of this application as amended, shall constitute a ratification of such changes or amendments."

It is correctly urged for the complainant that the terms of this reservation of a right to amend the contractual application by the insured for this policy does not embrace, by expression or implication, authority for

the substitution of a different beneficiary from that named in the application. The clause above quoted covers only a change in "(1) the plan in the rating class, or (2) the amount applied for," and quite obviously the change in the beneficiary comes under neither head. The case is one, therefore, in which this vitally important change was made by the Company without any authority whatever.

As already indicated, the change of the beneficiary is sought to be justified upon the theory that the application for the policy carried upon its face notice that the beneficiary named bore no relationship to the insured, and that the policy if so issued would have been uncollectible because within the general rule, based on grounds of public policy, requiring that the beneficiary shall have an "insurable interest" in the life of the insured. We agree with the insistence made for the complainant that this rule is without application for two reasons: (1) Because it is a case in which the insured was himself taking out and paying for the insurance on his own life for the benefit of a third party, a situation not to be confused with those cases in which a third party procures and pays for insurance on the life of another; or where the insured procures the insurance under an agreement that it is to be assigned to and paid for by a third party without insurable interest, as in *Bendet* v. *Ellis*, 120 Tenn., 277, 111 S. W., 795, 18 L. R. A. (N. S.), 114, 127 Am. St. Rep., 1000. And, MR. JUSTICE BUCHANAN, in *Marquet* v. *Ætna Life Insurance Go.*, 128 Tenn., 213, 159 S. W., 733, 735, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677, in approving the rule requiring an insurable interest, limits it to those cases "where the insurance is taken out and paid for by the beneficiary as a speculation." This

distinction is recognized by MR. JUSTICE WILKES in his opinion in *Clement* v. *New York Life Ins. Co.*, 101 Tenn., 22, 35, 46 S. W., 561, 564, 42 L. R. A., 247, 70 Am. St. Rep., 650, wherein it is said that "the weight of authority is that when the insured contracts directly with the in-surer, paying the premiums himself, he may designate as beneficiary one who has no insurable interest in his life." And (2) the bill as amended shows the existence of a relationship, although not by blood, which would justify rejection of the application of the noninsurable interest rule, in that it is made to appear that the deceased, Robert E. Knight, after having been abandoned by his family, during his minority, was taken into the home of the beneficiary named by him in this policy and treated as a member of his family, over a period of some six years, so residing until the day of his death; that the complainant beneficiary named in the application "occupied the place of *loco parentis,* or foster father, to the deceased." We are aware of no case denying recovery upon a policy of life insurance where such an association of family interdependence, although voluntarily assumed, existed.

It is urged for the administrator that the bill shows a binding ratification of the change made by the company in the beneficiary, in that it appears that the policy was accepted and retained with this change on its face. It will be borne in mind that this contest is not between the two original contracting parties, and no rights or equities of the company are involved. But assuming that the application of the doctrine of ratification may be invoked on behalf of the administrator of the deceased, who was the insured and against whom the invoked ratification would operate, we are of opinion that some notice should have been given of this wholly unauthorized

and unanticipated change in the contract proposed and set forth in the writing signed by the insured, other than the mere delivery of the policy, in order to sustain so material a modification on the theory of ratification. Policy forms are more or less complex and difficult for laymen to understand readily. This deceased is alleged to have been illiterate. No suggestion was made to him of any change from the contract he had performed his part in the execution of. And mere delivery of the policy can hardly be said to be a compliance with the requirement, expressed in the option provision above quoted, that, if the company elects to make a change, it shall "prepare and submit the policy," etc. This requirement that the company shall "submit" the policy would seem to contemplate the calling of the insured's attention to the change, in order that he have opportunity to consider and accept, or reject, it as changed.

The original bill filed by Merriam prays that the policy "be reformed so as to express the real legal contract of the parties thereto in the record under consideration." The general rule is that a court of equity will reform a contract, upon a proper showing, to right an injustice for fraud, accident, or mistake. *Tennessee V. I. R. Co.* v. *Patterson*, 158 Tenn., 429, 14 S. W. (2d), 726. This rule would apply to an erroneous designation of a beneficiary as well as to an erroneous description in a deed, as in *Pittsburg Lbr. Co.* v. *Shell*, 136 Tenn., 466, 189 S. W., 879. The allegation in the bill in this case that this change in the beneficiary was made fraudulently by the one party and without the knowledge of the other would seem to bring the case within the general reformation rule. It is the general rule that reformation will be denied on the ground of ratification only when there is full

knowledge of the facts by the party against whom ratification is invoked; and, to make ratification effective, the party must have ratified the instrument as it was, and not as he thought it was. 53 C. J., 695, citing *Elliott* v. *Sackett*, 108 U. S., 132, 2 S. Ct., 375, 27 L. Ed., 678, and other cases.

The recent case of *Woodfin* v. *Neal*, 16 Tenn. App., 481, 65 S. W. (2d), 212, 214 in which *certiorari* was denied by this court, is relied on for Merriam and is similar on its facts and in point, not only on the proposition that, as therein expressed, "One may take out a policy of insurance on his own life and make it payable to whom he will, and it is not necessary that the beneficiary named should have an insurable interest," citing *Clement* v. *New York Life Ins. Co.*, *supra*; 1 Couch on Ins., 772, section 205, and other authorities, but also on the proposition that it is encumbent upon the company making a change in the beneficiary without the knowledge or consent of the insured to do more than merely deliver the policy to him in order to charge him with notice of the change, as a predicate for ratification thereof; and authorities are freely quoted to the effect that reformation will be declared under facts like those here, where the company has changed the beneficiary, or his interest.

No basis for estoppel appears. The administrator was in no manner prejudiced by the delay, or failure to protest the change.

Counsel for the administrator cites on the question of ratification *Empire State Life Ins. Co.* v. *Beckwith*, 5 Hun. (N. Y.), 122, and *Ginners' Mut. Underwriters' Ass'n* v. *Fisher* (Tex. Civ. App.), 222 S. W., 285. Neither of these cases are in point. The first was a suit on a note given for a premium, and the court held the maker liable, despite his showing that the policy had been issued by a

different company from the one he thought he was dealing with; it appearing that he had received and held the policy and enjoyed its protection for four months, with full opportunity to know the facts, without objection. In the second case the court held the company liable for a fire loss on a policy which it had itself changed in some details of coverage without the knowledge of the insured, the defense of incompleted contract being rejected.

The decree of the chancellor is affirmed, and the cause remanded.