# COMMERCIAL STANDARD INS. CO. v. PAUL et al.— 245 S. W. (2d) 775.

Eastern Section. July 18, 1951.

Petition for Certiorari denied by Supreme Court, October 9, 1951.

Coffey, Durand & Coffey, of Chattanooga, for appellant.

Wood, Dietzen & Parks, Wilkerson & Wilkerson, and Chambliss, Chambliss & Brown, all of Chattanooga, for appellees.

HOWARD, J. Referring to the parties as they appeared below, the complainant, Commercial Standard In-

surance Co., filed this suit against the defendants, Mrs. Robbie M. Paul, Margaret Paul Aymon, William A. Nabors, et al., for the purpose of ascertaining the rights of the parties under an automobile liability insurance policy issued by complainant. The original bill avers in substance that complainant, through its agent Kemp & Company, at Chattanooga, Tennessee, issued an automobile liability policy to the defendant, Robbie M. Paul, on a Dodge car, the effective date period being December 27, 1948 to December 27, 1949; that said policy was a renewal of a similar policy previously issued by complainant to assured on the same car for the year beginning December 1947, which policy took the place of one previously issued to assured in December 1946, by said agent, but with a different insurance company, and to which the complainant herein was not a party; that the Dodge car described in the two policies issued by complainant was not the property of the named assured, Mrs. Paul, but was the property of her daughter, the defendant Margaret Paul Aymon, being registered in the latter's name.

The bill further sets out that the Dodge car owned by the defendant Aymon, and while driven by her and on her own business, was involved in an automobile accident on December 11, 1949, resulting in personal injuries to the defendants William Nabors, et al., for which the injured parties have filed suits for damages in the Circuit Court of Hamilton County against the defendants, Robbie M. Paul and Margaret Paul Aymon; that complainant, being uncertain as to its responsibility to defend these suits, and having requested the defendant Paul to sign a non-waiver agreement before undertaking such defense, which she refused to sign, is entitled, because of these circumstances, to have the court declare its rights and responsibilities under the terms of the policy before

entering its appearance and assuming the defense of these actions at law.

It appears that the plaintiffs in the damage suits were made defendants herein for the purpose of enjoining them from taking further steps in said damage suits until the rights of the parties are declared and settled, and they were enjoined from further prosecuting the damage suits pending the determination in this cause.

The defendants Nabors, et al., filed answers to the bill admitting that their suits were pending in the Circuit Court, but denied any knowledge of the transactions between complainant and the other defendants and demanded proof of the allegations of the bill.

The defendants Paul and Aymon filed an answer and cross-bill averring in substance that complainant's agent, Kemp & Company, was advised prior to the time the policies were issued that the defendant Aymon (then Margaret Paul) was the owner of the Dodge car and asked that the contract of insurance be reformed to show this fact.

The complainant answered the cross-bill denying generally the material allegations thereof and averring that the agent, Kemp & Company, was acting as agent for another company when the first policy on the Dodge was written in 1946, and that any information obtained by said agent or should have been obtained at that time was not binding on complainant.

The Chancellor held in substance that complainant's agent, Kemp & Company, was advised of the true ownership of the Dodge car and accordingly decreed a reformation of the policy. From the Chancellor's decree the complainant has appealed to this Court, assigning errors.

The record reveals that Mrs. Paul is an elderly woman, a nurse by profession and operates a nursing home in

Chattanooga, and that her daughter Margaret lives in the home with her; that Mrs. Paul, being unfamiliar with the intricacies and technicalities of insurance and insurance policies, had for several years wholly depended upon Mr. J. M. Kemp, owner of Kemp & Company, complainant's agent, to take care of all her insurance needs including, but not limited to, automobile insurance. It appears that Mrs. Paul did not drive a car and that her daughter Margaret did all the driving for her, which fact was known to Mr. Kemp prior to and at the time the policies in question were issued.

In 1947 Mrs. Paul owned a 1936 Chevolet car on which she carried liability insurance with the Car & General Insurance Corporation, Ltd., the policy having been issued in December 1946 by its agent, Kemp & Company, which at the time was also the agent of the Commercial Standard Insurance Company, complainant herein.

On August 11, 1947, Margaret Paul (now Mrs. Aymon), purchased a 1946 Dodge automobile, having borrowed $1400 from her mother to apply on the purchase price. After the purchase was made it appears that Mrs. Paul, in the presence of her daughter, telephoned Mr. Kemp informing him of the transaction and requesting that he transfer the insurance carried on the Chevrolet to the Dodge car. She was informed by Mr. Kemp that this could be done and a new policy or indorsement was thereupon issued describing the Dodge car but erroneously naming Mrs. Paul as the insured and owner. Both Mrs. Paul and her daughter testified that Mr. Kemp was positively told at the time of the requested transfer that Margaret had bought and was the owner of the Dodge car.

In December 1947 when the policy which had been issued in the name of the Car & General Insurance Corpora-

tion, Ltd., expired, a new policy was issued by the agent in the name of complainant company, in which Mrs. Paul was again named as the insured. Upon the expiration of this policy in 1948, a renewal policy was issued naming Mrs. Paul as the insured for the third time and this policy was in effect at the time of the accident on December 11, 1949. It seems that the alleged error in the name on the policy was not discovered until after the accident by complainant's attorney, because, as Mrs. Paul testified, she did not read the policies and depended solely upon Mr. Kemp to properly insure not only the automobile but all of her property, and that she did not know that the policy should have been in her daughter's name.

Mr. Kemp testified that he remembered Mrs. Paul telephoning him about transferring the policy from one car to the other, but that he had no recollection of her telling him that her daughter was the owner of the Dodge car. He said, however, that Mrs. Paul was entirely trustworthy and truthful and that if she said she told him that Margaret had bought and was the owner of said car that he would not say that she did not so tell him, and that his agency received several thousand telephone calls a year regarding insurance matters. Because of the numerous telephone calls received by the agency, it is highly probable that Mr. Kemp would not remember the entire conversation which he had with Mrs. Paul regarding the ownership of the car. On the other hand, Mrs. Paul stated that she had made relatively fews calls regarding her insurance, and for this reason we think that she would more likely have a better recollection of the details of the conversation than would Mr. Kemp. It further appears that when Mrs. Paul telephoned Mr. Kemp regarding the transfer of the policy that she did

not give him either the serial or motor number of the Dodge car. Just how this information was obtained is not disclosed, however, it is apparent that the information was obtained either from the seller of the car or from the registration records in the County Court Clerk's Office. At either place the agency could have also learned the name of the owner of the car inasmuch as Mrs. Paul was relying absolutely upon Mr. Kemp to see that the policy was properly written.

■ An insurance policy, like any other contract, which by reason of a mutual mistake in its execution does not conform to the real agreement of the parties, may be reformed in a Court of Equity when the mistake is established by clear and convincing proof. Pittsburg Lumber Co. v. Shell, 136 Tenn. 466, 189 S. W. 879; Tennessee Valley Iron & R. Co. v. Patterson, 158 Tenn. 429, 14 S. W. (2d) 726; Merriam v. National Life & Accident Ins. Co., 169 Tenn. 291, 86 S. W. (2d) 566; Gibson's Suits in Chancery, 4th Ed., Sec. 945, pp. 770, 771.

It is urged that the knowledge previously acquired by Kemp in 1947 and prior thereto, while acting for another principal, would not subsequently be imputed to complainant when its policy was issued as a renewal by said agent.

■ Admittedly the Car & General Insurance Corporation, Ltd., was Mrs. Paul's insurer at the time of the requested change, which was approximately four months before the expiration of the policy. Neither Mrs. Paul nor her daughter ever filled out an application for liability insurance with Mr. Kemp, nor did either of them ever express a preference that the insurance be placed with any one of the companies represented by Mr. Kemp, who it appears was general agent for both the Car & General Insurance Corporation, Ltd., and complainant. All Mrs.

Paul and her daughter wanted was protection, and they appeared to have relied completely upon Mr. Kemp's judgment on matters pertaining to insurance. In 1947 when the renewal policy was issued in complainant company, Mrs. Paul was not told by Mr. Kemp of the change in companies and no additional information was requested of her. It is apparent that when the agent issued the renewal policy with complainant, he used the information previously acquired while representing the Car & General Insurance Corporation, Ltd. Under these circumstances we think that the knowledge, though previously acquired by the agent, would be imputable to complainant.

By Code, Section 6087 all persons soliciting insurance, excepting fire insurance brokers, shall in all matters relating to the application and policy be regarded as agents of the company and not of the insured, notwithstanding provisions in the policy to the contrary.

In matters pertaining to insurance the insured deals exclusively with the insurer's agent. The insurer cannot deal with its patrons in any other way. Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to and upon which the insured relies, and knowledge of matters affecting the risk or conditions of the policy acquired by the agent in soliciting the insurance is the knowledge of the insurer. Franklin v. Firemen's Ins. Co., 4 Tenn. App. 688; Phillips v. North River Ins. Co., 14 Tenn. App. 356; Hale v. Sovereign Camp W. O. W., 143 Tenn. 555, 226 S. W. 1045; American Nat. Ins. Co. v. McPhetridge, 28 Tenn. App. 145, 187 S. W. (2d) 640; Industrial Life & Health Ins. Co. v. Trinkle, 185 Tenn. 434, 206 S. W. (2d) 414.

Under Code, Section 6126 a misrepresentation or warranty does not avoid a policy of insurance unless

made with actual intent to deceive, or unless it increases the risk of loss. Only such misrepresentations as would naturally and reasonably influence the insurer and induce it to decline the application are material. Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S. W. 44, 26 A. L. R. 1270; Interstate Life & Accident Co. v. Potter, 17 Tenn. App. 381, 68 S. W. (2d) 119.

There is no proof of any intent to deceive or that the risk of loss was increased by the agent's failure to name the true owner of the car in the policy. The Dodge car was used and driven in the same way as was the Chevrolet. Mrs. Paul never drove either of the cars, her daughter always driving for her. Mr. Kemp knew these facts. After the accident occurred and the error in the name of the insured was discovered, the complainant immediately issued another policy for the Dodge car, at the same premium, naming Mrs. Aymon as the insured, thereby indicating ''no increase in the risk'' by having her as the insured.

It is also urged that the Court erred in reforming the contract because both defendants are estopped by acquiescence, ratification, laches and negligence.

As previously pointed out, Mrs. Paul relied completely upon Mr. Kemp to advise her on matters of insurance and to properly insure her property, and she apparently believed that the policy as written would protect her and Mrs. Aymon. Mrs. Paul paid the premiums when they became due without question, and upon being told of an increase of $12 in the premium at the time of the requested change, she forthwith sent the agent a check for said amount. Upon receipt of the policy she said that she looked at it but never read it; that she relied upon the knowledge of the insurance agent for a policy in conformity with her request and supposed that the agent

had seen that it was correctly drawn. The fact that the policy was held for more than two years before discovering the mistake would not prevent the insured from seeking a reformation within a reasonable time after discovery, if, by the delay, the complainant's rights were not prejudiced thereby. There is no proof that the complainant's rights were prejudiced by the delay. Mere acceptance and retention of policy by insured does not necessarily preclude obtaining a reformation thereof. City of Lawrenceburg v. Maryland Casualty Co., 16 Tenn. App. 238, 64 S. W. (2d) 69, 74; 29 Am. Jur. Sec. 253, p. 244; 44 C. J. S., Insurance, Section 279, pages 1115, 1116.

■ ■ We think that the rule stated in City of Lawrenceburg v. Maryland Casualty Co., supra, is applicable here. In that case the Court said:

"On the part of the complainant city, there was a mistake in the provisions of the policy. Its officers were led to rely upon representations and assurances made by defendant's agents. If these agents honestly intended to bind the company to the full coverage, or if they believed that a policy specifying coverage, as this policy did, included full coverage, they also made a mistake, so that the mistake was mutual. If these agents making the assurances and agreement intended that the policy when issued should not include the full coverage, they were guilty of fraud, and it was mistake of the insured induced by the fraud of the insurance agent, binding on the insurer. In either view the city would be entitled to recover.

"In such a case the insurer is not entitled to invoke the rule that the negligence of the insured in failing to read and understand the policy, and in retaining it, will preclude relief in equity. It will not work an estoppel upon the assured. In 26 C. J. 107, the rule is stated that

a mere failure to read the policy, especially if it is a renewal, is not such negligence as will defeat the right to reformation, citing Palmer v. Hartford [Fire] Insurance Company, 54 Conn. 488, 9 A. 248; Roberts & Son v. National Insurance Company, 2 Ohio App. 463. In 2 Cooley's Briefs on Insurance, p. 1427, it is stated in the text that the rule that the negligence of the insured in retaining the policy will preclude relief in equity is not strictly applied. In Stevens v. Equity Mutual Fire Insurance Co., 66 Mont. 461, 213 P. 1110, it was said that an insured has a right to rely on the good faith of insurer and his agent, and it is not carelessness on his part to suppose that a policy has been issued that will give protection under the stated facts relating to the application, and, in an action for a fire loss where the policy did not conform to the statements made by the insured to the agent taking the application, the failure of the insured to inspect a policy after the receipt was not negligence barring recovery in action to reform the policy. The same rule was applied in Farwell v. Home Insurance Company, [5 Cir.] 136 F. 93, 68 C. C. A. 557, and in Merchants' & Manufacturers' Inter-Insurance Alliance v. Hansen, Tex. Civ. App., 258 S. W. 257.

"The defense of laches is not available, for there is no evidence that lapse of time has prejudiced the rights or interests of the defendant company. It appears that, immediately after the accidents occurred, the city gave notice to the company of the accidents and called on it to defend the actions for damages, and that the company refused so to do on the ground that it had not insured against liability from such accidents. * * * There has been no loss or impairment of evidence, and no rights of third persons have intervened. The true rule of laches is that it is not, like limitation, a mere matter of time,

but is particularly a question of the inequity of permitting a claim to be enforced; this neglect being founded on some change in the condition or relation of the property or the parties. In other words, it is not merely delay, but delay that works a disadvantage to another. 10 R. C. L. 396; Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Parker v. Bethel Hotel Co., 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; Roysdon v. Terry, 4 Tenn. App. 638, 653.''

■■ Regarding the assignment with reference to the insurable interest of the defendants, the proof clearly shows that Mrs. Aymon, one of the defendants, is the owner of the car in question, and under our authorities she could maintain a bill for the reformation of the policy. Any person has an insurable interest in property, by the existence of which he will gain an advantage, or by destruction of which he will suffer a loss whether he has or has not any title in, or lien upon, or possession of the property. Cherokee Foundries, Inc., v. Imperial Assurance Co., 188 Tenn. 349, 219 S. W. (2d) 203, 9 A. L. R. (2d) 177.

Furthermore, under the proof, the agent of the insurer had full information regarding the ownership of the car. There was no effort to conceal this from the agent. He was not only told by Mrs. Paul who the owner was, but this information was available from the public records where he apparently obtained the motor number.

''It is a general rule that where an applicant for automobile insurance gives to the agent of the insurer full information concerning the legal title to the car and discloses that he is not unconditional and sole owner of the car, and the agent, acting within the scope of his authority, executes and delivers to the applicant the policy and accepts the premium, the knowledge so ac-

quired by the agent is imputed to the company, and the company is thereafter estopped in an action on the policy from defending on the ground that the assured did not have legal title required by the provision of the policy.'' Huddy, Automobile Law (1931 ed.) Vol. 13-14, pp. 162, 163.

 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, states the rule as follows:

''The violation of a condition or other provision requiring unconditional and sole ownership of the car, in a policy insuring an automobile owner against loss or destruction of the automobile by fire, theft, or the like, may be waived by the insurer's knowledge as to the facts at the time of issuance of the policy; and in some jurisdictions failure by the insurer to inquire concerning the real title to the property involved constitutes a waiver of the sole and unconditional ownership clause of the policy, the insurer being presumed to have relied on its own knowledge.

\* \* \* \* \* \*

''Where an agent of the insurance company is aware of the fact that the insured is not the unconditional owner thereof when he writes the policy upon the automobile, the insurer is charged with such knowledge and in consequence is deemed to waive the condition in the policy with reference to the ownership of the automobile.

''The insurance company is estopped to defend, on the ground that the legal title was not in the name of the insured, an action on the policy by the owner of the legal policy where an insurance agent, with full knowledge of the status of title to an automobile, and acting in the usual course of his duties, executes a policy thereon

in the name of a third person who has only an equitable interest in it.

"Where, although the insured states the nature of his interest to an insurance agent fully and accurately, so that knowledge thereof is therefore to be imputed to the company represented by such agent, the conduct of the agent in writing a policy of insurance on the automobile failing to disclose the true title or interest of the insured, followed by the company's acceptance of the premium on such policy and the insured's relying on its validity, effectually estops the company from asserting the defense that the policy is void because of the plaintiffs not being in fact the sole owners of the property insured." Vol. 6, Sec. 3629, pp. 251, 252.

In numerous decisions the appellate courts of our state have recognized and followed the foregoing rule. Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585; Phillips v. North River Ins. Co., 14 Tenn. App. 356; Cooley v. East & West Ins. Co., 166 Tenn. 405, 61 S. W. (2d) 656; Baird v. Fidelity-Phenix Fire Ins. Co., 178 Tenn. 653, 162 S. W. (2d) 384, 140 A. L. R. 1226; De Ford v. National Life & Accident Ins. Co., 182 Tenn. 255, 185 S. W. (2d) 617.

We think that the proof fully warranted the decree of the court reforming the policy, and that the policy as reformed expresses the original intent of the parties and is not a new contract between utter strangers as insisted by complainant. Equity not only looks to intent rather than form, but also "regards that as done which ought to be done."

Accordingly, all assignments of error will be overruled and the decree of the Chancellor will be affirmed at appellant's costs.

McAmis and Hale, JJ., concur.