The MAGNAVOX COMPANY
OF TENNESSEE

v.

BOLES & HITE CONSTRUCTION COMPANY and Gulf Insurance Company.

BOLES & HITE CONSTRUCTION COMPANY, Appellant,

v.

GULF INSURANCE COMPANY, Paul A. Moore Insurance Agency, Inc., Paul A. Moore and Markley Murray, Appellees.

Court of Appeals of Tennessee, Eastern Section.*

March 6, 1979.

Certiorari Denied by Supreme Court July 30, 1979.

* Opinion abridged for publication.

Jerry W. Laughlin and John A. Armstrong, Greeneville, for Bowles & Hite Const. Co.; Silvers, Randall & Laughlin, P. C., Greeneville, of counsel.

Dick L. Johnson, Dick L. Johnson & Associates, Johnson City, for Gulf Ins. Co.

James A. Weller, Weller, Miller, Carrier & Miller, Johnson City, for Paul A. Moore Ins. Agency, Inc., and Paul A. Moore, individually.

O. C. Armitage, Jr., Greeneville, for Markley Murray.

## OPINION

FRANKS, Judge.

In the original action, appellant was required to indemnify Magnavox for a judgment returned against it in a suit for the wrongful death of an employee of appellant's sub-contractor. Upon payment of the judgment, appellant by cross-action against its insurance carrier, Gulf, and a third-party suit against the insurance agency, Paul A. Moore Insurance Agency, Inc., and its agents, Moore and Murray, sued to recover

the sum paid to Magnavox on the theories that appellant's insurance policy, issued by Gulf, should be reformed to provide coverage for the loss and the insurance company should be estopped to deny coverage existed due to the negligence of its agents in the handling and issuance of the policy or, in the alternative, the insurance agents should respond in damages for their negligence for failing to procure coverage for the loss at the time the policy was written.

Gulf, in its answer, admitted it had issued a policy to the appellant effective January 1, 1967, and relied upon an exclusion in the policy which provided:

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; . . .

in denying coverage for appellant's loss under the policy. Further, it denied estoppel was applicable and pled the statute of limitations and the contributory negligence of appellant's partners.

The third party defendants answered denying any negligence and asserted they had complied with appellant's request for insurance and appellant had accepted similar policies in the past without protest and due to this pattern was charged with knowledge of the contents of the policies and was therefore negligent.

The evidence reveals that appellant was a partnership engaged in the contracting business and, in 1960, began entering construction contracts with Magnavox. At that time, appellant was procuring its insurance coverages from the Reed Agency but, from 1964 until the time of the accident resulting in the judgment against Magnavox, procured insurance coverages from the Moore Agency which purchased or merged with the Reed Agency.

The contract giving rise to appellant's liability was entered with Magnavox on July 27, 1966. Prior to that time, appellant had entered five or six construction contracts with Magnavox; all of the contracts with Magnavox were on standard forms and contained identical provisions pertinent to this case and the Moore Agency had handled appellant's insurance coverage during the time some of those contracts were in force. Copies of the contracts came into the possession of the Moore Agency from time to time, including this contract, primarily for the purpose of issuing bonds where bonding requirements existed.

The pertinent provisions of the contract with Magnavox include the following:

### ARTICLE 15—LIABILITY TO OTHERS

The contractor shall at all times indemnify, defend and hold Owner harmless from any and all actions, claims, demands, costs, damages, penalties or expense of any kind arising out of, or in connection with, injury (including death) to any person or damage to any property that may occur or that may be alleged to have occurred, during or in connection with performance of this Contract, whether such claim shall be made by an employee or agent of the Contractor, or by a third person, and whether or not it shall be claimed that the alleged damage or injury (including death) was caused through a negligent act or omission of the Contractor, his officers, his agents or employees, or otherwise; and, at his expense, the Contractor shall defend any and all such actions and pay all costs, expenses and judgments arising therefrom.

### ARTICLE 16—CONTRACTOR'S INSURANCE

A. The Contractor shall not commence work until he has furnished two (2) copies of insurance certificates acceptable to Owner, certifying that he has obtained the required insurance and that such insurance shall not be cancelled or materially changed without fifteen (15) days prior written notice from his insurance carrier to Owner:

1. . . . .

2. *Liability Insurance*—The Contractor shall maintain during the life of this Contract, Comprehensive General Liability Insurance as shall protect himself, Owner, and any subcontractor from any and all claims for damage or loss for personal injury (including

death) as well as for claims for property damage or loss which may arise from operations under this Contract, whether such operations be by himself or a subcontractor, or by anyone directly or indirectly employed by either of them, or in such a manner as to impose liability on Owner. The amounts of such insurance shall be as follows:

*Bodily Injury Insurance*—In the amount of not less than $300,000.00 for injuries, including accidental death, to any one person; not less than $500,-000.00 per occurrence.

*Property Damage Insurance*—In an amount not less than $100,000.00 per occurrence.

The Moore Agency, pursuant to Article 16, would issue certificates of insurance coverage to Magnavox and issued such certificates on January 12, 1967, certifying that the policy issued by Gulf, effective January 1, 1967, was in full force and effect. The policy issued by Gulf provided identical coverages to the prior policies issued through the Moore Agency to appellant. Gulf's policy was for a period of 12 months and was a comprehensive general liability policy for contractors with the premium based on the total expended under the contracts.

On February 1, 1967, William Phelps, an employee of appellant's sub-contractor, while working pursuant to appellant's contract with Magnavox, was electrocuted and the damages for his wrongful death were ultimately adjudged to be the joint responsibility of Magnavox and the Johnson City Power Company,[1] for which appellant was required to indemnify Magnavox under the terms of Article 15 of the contract, *supra.*

Appellant insists that the Chancellor erred in refusing to reform the policy so as to provide coverage for its damages. The Chancellor in dismissing this suit found, and the record supports, that appellant and the insurance agents did not discuss "contractual insurance" at any time prior to the loss

and relied upon *Hardison Seed Co. v. Continental Casualty Co.,* 56 Tenn.App. 644, 410 S.W.2d 729 (1966).

Appellants rely upon the case of *Henry v. Southern Fire & Cas. Co.,* 46 Tenn.App. 335, 330 S.W.2d 18 (1959), wherein the court, in discussing the duties of an insurance agent, stated:

In our opinion it is not necessary to determine in just what manner Dr. Cox [the insurer's agent] was in error; that is, whether he misconstrued the contracts; or forgot about the provisions of the motor vehicle policy excluding coverage when the truck was pulling a trailer not covered in the policy; or forgot the provisions of the Manufacturers' and Contractors' policy excluding coverage when the accident involved an automobile or truck away from the premises of the sawmill itself; or forgot to include the trailers in the motor vehicle policy; or simply failed to obtain sufficient information from the complainants to enable him to write policies giving the complainants full liability coverage. The result was the same to the complainants. They were lulled into a false sense of security. They were misled to their prejudice.

330 S.W.2d at 30.

The federal case of *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.,* 493 F.2d 257 (6th Cir. 1974), quoted with approval by our Supreme Court in *Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co.,* 544 S.W.2d 351 (Tenn.1976), reconciled the *Henry* and *Hardison* decisions by noting that in the former the doctrines of estoppel or negligence were applied to an exclusionary clause while in the latter the doctrines were insufficient to add an entirely new type of coverage. *Dallas Glass* noted this principle in quoting 45 C.J.S. *Insurance* § 674a, as follows:

As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they can-

---

1. For cases reporting that suit, *see Phelps v. Magnavox Co. of Tennessee,* 62 Tenn.App. 578, 466 S.W.2d 226 (E.S.1970); *Phelps v. Magna-* *vox Co. of Tennessee,* 497 S.W.2d 898 (Tenn.Ct. App.W.S.1972).

not operate radically to change the terms of the policy so as to cover additional subject matter. At p. 353.

The evidence establishes that appellant, while not specifically requesting contractual liability coverage, repeatedly requested the Moore Agency to provide complete liability coverage for appellant's contracting business.

[Paul A.] Moore, in his testimony, explained how he went about determining the coverages required by appellant as follows:

Q. Now, at the time that this was written, can you tell me whether or not you had any conversation with Mr. Hite—what insurance was requested and what was done?

A. Well I can surmise pretty much.

. . . . .

MR. JOHNSON —I'm talking about the time that it was originally written with Aetna C & S.

A. In the usual sequence of events in this situation is the only thing I could say—what I would do ordinarily. When Paul Hite offered to let me write his business I probably called the Aetna C & S Special Agent, which would be what I would do today on an account of this kind. I would ask him to bring me all of his policies. I would review them, and go over them with the special agent, who would then, together with me, fill out the proper application for coverage.

When the insurance was changed by the agent to Gulf, effective January 1, 1967, Moore made the following explanation:

Q. Was anything special done in switching it, or did you just write new policies on Gulf?

A. Well, I probably would have followed the same procedure—call Charles Link, he was special agent with the A. L. Williams Agency, who is the underwriting agency for Gulf Insurance Company in Tennessee.

Gulf doesn't have a branch office in Tennessee. They use the A. L. Williams General Agency for their under-writing, and Charles Link is the special agent.

I probably called Charles Link and went through the same procedures that I would—

Q. And reviewed the old policies with him?

A. *Yes, sir, and through his efforts and my efforts together we made new applications.*

Now, I'm not saying that this happened, but that would be the procedure that I've always used.

[Emphasis supplied.]

It may be reasonably inferred that Moore followed the procedure outlined since Gulf called no witnesses to refute or clarify this evidence and it should be noted at that time Gulf had filed a third-party complaint against the Moore Agency seeking recovery for Moore's negligence should Gulf be held liable under its policy with appellant.

The agent's reason for not providing contractual liability coverage may be found in Moore's responses to the following questions by the court.

Q. Did you ever discuss the famous Article 15 with Mr. Hite?

A. No, sir.

Q. Do you know what I mean by Article 15?

A. In that contract?

Q. Yes, sir, the one that the Court of Appeals bound Boles & Hite to indemnify Magnavox?

A. Yes, sir, I've read it now. I've read it since then.

Q. But you were not aware of it back in '66 and '67?

A. No, sir.

Q. Did you ever discuss it with Mr. Hite?

A. No, sir.

. . . . .

Q. Did you ever discuss with Mr. Hite his potential liability, Mr. Moore, under the assumption of contractual liability provision, other than with this incident in question. Down through the years, was the question raised?

A. Prior to this, no, prior to this litigation I had not. It had been our instruction from—through our insuror's organization, through mutual agencies, associations which we belonged—you know, we get all the Court decisions sooner or later in these bulletins, and more and more Courts had been holding that hold harmless agreements were not in the best interest of the public, therefore they weren't valid, and I think that's the way you held in this particular instance, which was reversed by the Court of Appeals. I didn't see any exposure there, actually.

Moore further testified that at the time the policy was written, contractual liability insurance coverage was available in Tennessee for a nominal premium and, in fact, was subsequently added to appellant's coverage. Moore was aware of appellant's operations, of the existence of contracts with Magnavox which were at his disposal, and we conclude when he undertook to provide appellant with complete liability coverage he had a duty to ascertain the required coverages and it was beyond his authority to unilaterally reject contractual liability coverage on his perception that there was no exposure under hold harmless agreements but should have provided this coverage or seasonably called the possible exposure to appellant's attention, for its acceptance or rejection.

■ Moore's omission is likewise the responsibility of the insurance company. Our Supreme Court noted in the case of *Vulcan Ins. Co. v. Segars*, 216 Tenn. 154, at page 164, 391 S.W.2d 393 pages 397–98 (1965) that the negligence or the mistake of an agent within the scope of his authority is the responsibility of his principal, the insurance company, and stated:

> With respect to such a situation it is said in Vance, Insurance, 3rd Ed., Anderson, Section 89, page 540:
>
> 'After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer. The situation seems to be strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vendor supplying an article which he knows is to be used for a specific purpose impliedly warrants that the article furnished is suitable for that purpose.'

This is reinforced by the inference that Gulf's specialist participated in the preparation of appellant's application for the policy.

■ We conclude that the facts of this case fall within the rationale of the quoted portion of *Henry, supra* and, as *Henry* noted, an insurance company is estopped to take advantage of a condition which its agent, by mistake or negligence, failed to handle properly in the policy.

> The insured, by trusting in the skill and competence of the agent and paying the premiums for expected protection, would be prejudiced if the insurance company were allowed to assert the condition avoiding liability.

*Henry*, 46 Tenn.App. p. 365, 330 S.W.2d p. 32.

This principle is recognized in *Hardison Seed*, which states the doctrine of estoppel may be the basis of recovery, "where the loss was within the coverage provided by the insuring clauses of the contract. *Dickens v. St. Paul Fire & Marine Ins. Co.*, 170 Tenn. 403, 95 S.W.2d 910; *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 140 A.L.R. 1226; *Commercial*

*Standard Ins. Co. v. Paul*, 35 Tenn.App. 394, 245 S.W.2d 775; *T. H. Hayes & Sons v. Stuyvesant Ins. Co.*, 194 Tenn. 35, 250 S.W.2d 7; *Hully v. Aluminum Co. of America, supra*, [D.C., 143 F.Supp. 508]; and *Henry v. Southern Fire & Cas. Co.*, 46 Tenn. App. 335, 330 S.W.2d 18." [56 Tenn.App. pages 652–3, 410 S.W.2d page 733.]

The coverage provided in the policy in the insuring clause is as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, caused by an occurrence . . .

"An occurrence" is defined:

'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury . . . neither expected nor intended from the standpoint of the insured;

Under "Exclusions", the policy contains the exclusion set out in Gulf's answer to the cross-claim, *supra*.

■ We conclude that the insurance company is estopped to rely on the exclusion in its contract excluding contractual liability coverage. The insuring clauses, in the absence of the exclusion, would provide coverage for this loss. That the coverage is broad enough to cover contractual liability, absent the exclusion, is denoted by the exclusion which expressly retains coverage for liability assumed under incidental contracts.

■ Finally, defendants argue that appellant was guilty of contributory negligence in accepting the policies without protest over a period of time. In this regard, appellant Hite testified:

Q. And did you read the policy or look at it?

A. Yes, I always do, but as I said, I don't know too much about insurance.

. . . . . .

Q. Did anyone at Magnavox ever explain to you what insurance you needed under this contract?

A. No, I was always telling my agent to contact Mr. Waddell [an employee of Magnavox] and see what insurance we needed to cover me and whoever had to be protected.

Hite and Moore were friends; Hite's full trust in Moore is explicit from the evidence. Appellant's contracts, many of its policies and other records were left in possession of the agency and Hite periodically admonished Moore to provide complete liability coverage for the construction company. Under these circumstances, we conclude appellant was lulled into a false sense of security and the acceptance of the policy was not negligence that would bar recovery. On this issue, *Henry* quotes the earlier case of this court, *Commercial Standard Ins. Co. v. Paul*, 35 Tenn.App. 394 at 404–5, 245 S.W.2d 775 at 780,:

In such a case the insurer is not entitled to invoke the rule that the negligence of the insured in failing to read and understand the policy, and in retaining it, will preclude relief in equity. It will not work an estoppel upon the assured. In 26 C.J. 107, the rule is stated that a mere failure to read the policy, especially if it is a renewal, is not such negligence that would defeat the right to reformation. [Citations omitted.]

*See also City of Lawrenceburg v. Casualty Co.*, 16 Tenn.App. 238 at 248–9, 64 S.W.2d 69 (1933).

We hold that Gulf is estopped to rely on the exclusion in the policy and appellant's loss is covered under the policy.

The defense of statutes of limitations was not reached and decided by the trial judge. We reverse the action of the trial court in dismissing this cause and remand for a determination of whether recovery is barred by statutes of limitations and entry of judgment.

Costs incident to the appeal are assessed against appellees.

PARROTT, P. J., and SANDERS, J., concur.